**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ONACTUATE CONSULTING INC.,

                    Plaintiff-Counter Defendant,        No. 1:20-CV-508
                                                       (LEK/CFH)

          v.

AEON NEXUS CORPORATION,

                    Defendant-Counter Claimant.

**APPEARANCES:**                   **OF COUNSEL:**

Condon Tobin Sladek Thornton Nerenberg    JUSTIN HANNA, ESQ.
8080 Park Lane Suite 700                   KENDAL REED, ESQ.
Dallas, Texas 75231
Attorneys for plaintiff-counter defendant

Phillips Lytle LLP                    MARC H. GOLDBERG, ESQ.
Omni Plaza                           TODD A. RITSCHDORFF, ESQ.
30 South Pearl Street
Albany, New York 12207
Attorneys for plaintiff-counter defendant

School Administrators Association        ARTHUR P. SCHEUERMANN, ESQ.
New York State
8 Airport Park Boulevard
Latham, New York 12110
Attorneys for defendant-counter claimant

### MEMORANDUM-DECISION & ORDER

    Presently pending before the Court is defendant Aeon Nexus Corporation's

("Aeon") motion to compel plaintiff OnActuate Consulting Inc. ("OnActuate") to produce

documents and respond to interrogatories.  <u>See</u> Dkt. Nos. 35-1, 35-23.  Defendant also moves for the imposition of sanctions for plaintiff's alleged failure to comply with the relevant discovery demands.  <u>See</u> Dkt. No. 35-23 at 3-4.  Plaintiff opposes defendant's motion.  <u>See</u> Dkt. No. 36.  Defendant replies.  <u>See</u> Dkt. No. 39.  With permission from the Court, plaintiff submits a sur-reply.  <u>See</u> Dkt. Nos. 43, 44.  For the following reasons, defendant's motion to compel is granted in part and denied in part.

## I.  Background

### A.  Plaintiff's Complaint and Defendant's Counterclaim

For purposes of this motion, the Court will assume the parties' familiarity with the facts, providing a brief summation of the factual and procedural background.[1]  In 2019, defendant worked on a "project" for the California Highway Police to "construct cloud-based information management warehouses[.]"  Dkt. No. 25 at 1, ¶ 4; <u>see</u> Dkt. No. 1 ("Compl.") at 2-3, ¶¶ 7; 11.  Defendant hired plaintiff as a subcontractor on the project and the parties executed a Master Services Agreement and Release Order.  <u>See</u> Compl. at 2, ¶¶ 7, 9.  Plaintiff alleges that it completed the work required under the parties' agreements but defendant "failed and refused to pay the amounts that [were] due[.]"  <u>Id.</u> at 4, ¶ 25.  As a result, plaintiff brought the present action alleging claims for breach of contract, promissory estoppel, unjust enrichment, quantum meruit, and account stated.  <u>See id.</u> at 5-7.  Defendant asserted numerous affirmative defenses and

---

[1] A more thorough recitation of the factual allegations and procedural history can be found in plaintiff's complaint, defendant's amended answer and counterclaim, and plaintiff's answer.  <u>See</u> Dkt. Nos. 1, 25, 26.

raised a counterclaim for breach of contract, alleging that plaintiff failed to perform the work as required under the agreements, forcing defendant to fire plaintiff before completion of the project.  See Dkt. No. 25 at 13, ¶ 75.

## II.  Legal Standard

Under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1).  Rule 26 tasks the Court to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Id.  "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012) (citing In re Agent Orange Prod. Liab. Litig., 517 F.3d 76, 103 (2d Cir. 2008)).  "The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive." Citizens Union of City of New York v. Att'y Gen. of New York, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017).

### III.  Arguments

Defendant argues that plaintiff has been nonresponsive to certain discovery requests, despite the parties conferring on numerous occasions.  See Dkt. No. 35-1, 35-23.  Defendant asks the Court to compel plaintiff to answer specific interrogatories and produce documents, primarily because plaintiff allegedly agreed to do so or because the information is relevant to its defenses and counterclaim.  See Dkt. No. 35-1, 35-23.  Plaintiff argues that defendant's motion to compel should be denied on procedural and substantive grounds.  See Dkt. No. 36.  Plaintiff contends that defendant's letter brief and defense counsel's affidavit violate this Court's Local Rules and the Federal Rules of Civil Procedure.  See id. at 8-12.  Plaintiff also avers that "there is no discovery that is outstanding[]" because it "has produced all documents responsive to the Requests."  Id. at 11; 4.

### IV.  Discussion

#### A.  Format of Defendant's Motion

Defendant submitted its motion to compel through a letter brief, see Dkt. No. 35-23, and counsel Arthur P. Scheuermann's "Affirmation in Support of Motion to Compel Discovery[.]"  See Dkt. No. 35-1.  Plaintiff argues that the motion should be denied because it violates Local Rule 7.1 and Fed. R. Civ. P. 7(b)(1)(B), (C).  See Dkt. No. 36 at 8-12.  Specifically, plaintiff contends that Scheuermann's affidavit is not supported by personal knowledge or "the exhibit to which it cites[,]" involves improper legal arguments, and includes statements that are irrelevant or "essentially legal

4

arguments[.]" <u>Id.</u> at 9-10 (citation omitted).  Plaintiff also argues that the letter and affidavit fail to state the relief sought.  <u>See id.</u> at 11-12.

"An affidavit must not contain legal arguments but must contain factual and procedural background that is relevant to the motion the affidavit supports."  N.D.N.Y. L.R. 7.1(b)(2).  To the extent Scheuermann's affidavit contains legal arguments, the Court will not consider them.  <u>See</u> <u>Krause v. Kelahan</u>, No. 6:17-CV-1045 (DNH), 2021 WL 5876678, at *1-2 (N.D.N.Y. Dec. 13, 2021) ("[T]he Local Rules for the Northern District of New York expressly forbid raising arguments by affidavit.") (citing <u>Danford v. City of Syracuse</u>, 2012 WL 4006240, at *3-4 (N.D.N.Y. Sept. 12, 2012) (refusing to consider legal arguments advanced in affidavit, especially without citations to caselaw)).

Insofar as plaintiff argues that Scheuermann's affidavit is not based on personal knowledge, Rule 7.1(b)(2) does not explicitly set forth this requirement.  <u>See</u> N.D.N.Y. L.R. 7.1(b)(2).  Scheuermann stated that "[t]his Affidavit is based on personal knowledge and information and belief, the sources being my review of the file in this matter and conferences with my client."  Dkt. No. 35-1 at 1, ¶ 2.  "[A] statement made 'to my knowledge,' unlike a statement made 'upon information and belief,' is sufficient to assert personal knowledge."  <u>SCR Joint Venture L.P. v. Warshawsky</u>, 559 F.3d 133, 135 (2d Cir. 2009).  "[P]ersonal knowledge includes basic, commonsensical inferences, so long as they are grounded in observation or other first-hand personal experience and are not flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience."  <u>In re Bridge Const. Servs. of Fla., Inc.</u>, 39 F. Supp. 3d 373, 383 (S.D.N.Y. 2014) (citations and quotation marks omitted); <u>see</u> <u>Brown v. McKinley Mall, LLC</u>, 15-CV-10446(F), 2017 WL 2332330, at *3 (W.D.N.Y. May 30,

2017) ("Absent an affidavit from a person with personal knowledge of the factual nature of an alleged undue burden arising from a discovery request pursuant to the Federal Rules of Civil Procedure, such generalized assertions that a discovery request is unduly burdensome will be overruled."); cf. Trustees of Loc. 8A-28A Welfare Fund v. Am. Grp. Administrators, No. 14-CV-1088 (RRM/PK), 2017 WL 3700899, at *2 (E.D.N.Y. Aug. 25, 2017) (refusing to strike an attorney affidavit "describing the claims asserted by [the p]laintiffs in the Complaint, and asserting that [the p]laintiffs are an employee benefit fund within the meaning of ERISA. . . . [because n]one of these statements are argumentative or speculative; all are within the attorney's personal knowledge given her role in this action.").

The Court will not comb Scheuermann's affidavit paragraph-by-paragraph to determine which portions are based on information and belief or personal knowledge. See United States Alliance Federal Credit Union v. Cumis Ins. Society, Inc., No. 03-CV-10317 (PGG), 2009 WL 2914368, at *15 (S.D.N.Y. Sept. 11, 2009) (holding that "[a] court is not required to conduct a line-by-line analysis of a challenged affidavit, however, and may simply disregard those portions that are inadmissible."). However, when defendant's letter motion relies on Scheuermann's affidavit, the Court will consider only the portions that are based on personal knowledge. See, e.g., Paul T. Freund Corp. v. Commonwealth Packing Co., 288 F. Supp. 2d 357, 369-70 (W.D.N.Y. 2003) ("When [the plaintiff] relies in its arguments on an objectionable portion of the . . . affidavit, the Court will review the portion cited and determine whether it is admissible for the purposes of the motions, or merely points to other evidentiary proof in admissible form.").

Plaintiff further challenges Scheuermann's affidavit under Fed. R. Civ. P. 7, which requires that "[a] request for a court order must be made by motion. The motion must . . . state with particularity the grounds for seeking the order[] . . . and state the relief sought." FED. R. CIV. P. 7(b)(1)(B), (C). "[W]hen a motion is challenged for lack of particularity the question for the court is whether any party is prejudiced by a lack of particularity or whether the court can comprehend the basis for the motion and deal with it fairly." E.E.O.C. v. Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Loc. 580, 139 F. Supp. 2d 512, 523-24 (quoting Registration Control Sys., Inc. v. Compusystems, Inc., 922 F.2d 805, 807-08 (Fed. Cir. 1990)) (additional citation and quotation marks omitted). Defendant asks the Court to "issue an order compelling the production of the outstanding discovery requests by a date certain, along with associated costs and attorneys' fees related to bringing this motion." Dkt. No. 35-23 at 1. The letter motion or affidavit mention each interrogatory or document request for which defendant is seeking judicial intervention such that the Court can comprehend the requested relief. See Dkt. Nos. 35-1, 35-23. Further, plaintiff responded and filed a sur-reply which demonstrates that it understood the relief defendant seeks in its letter motion. See Dkt. Nos. 36, 44. Thus, plaintiff is not prejudiced by the Court's consideration of the motion. Accordingly, the Court will not strike the affidavit or letter motion for a lack of personal knowledge or particularity. However, counsel is put on notice that an "affidavit is to contain facts of personal knowledge to the affiant and is to refrain from making legal arguments, and that future affidavits in violation of the Federal and Local Rules of Civil Procedure are subject to being stricken from the record."

<u>Dunning v. Ohmeda Pharm. Prods. Div., Inc.</u>, 97-CV-234 (FJS/GJD), 1998 WL 888980,

at *1 (N.D.N.Y. Dec. 14, 1998).

## B.  Interrogatories

### 1. Interrogatory Number 14

Defendant requested that plaintiff,

14. Identify every individual by name, address and telephone that
OnActuate assigned and/or hired to work on the CHP Project and provide
their title, description of duties and provide any job relevant descriptions
reflecting their work on the project.

> a. As to each individual identified above immediately above in No.
> 14, indicate whether the individual was an employee of OnActuate
> or was hire by OnActuate as a subcontractor or consultant.
>
> b. If any individual is identified as a subcontractor or consultant,
> please provide the name, address and telephone number of the
> entity that the individual worked for that OnActuate contracted with
> to work on the CHP Project.
>
> c. In regards to all non-Actuate employees, including by not limited
> to, subcontractors and consultants, produce copies of all contracts
> or agreements that memorialized the terms and conditions of the
> subcontractor/consultant's engagement with OnActuate to work on
> the CHP Project.
>
> d. In regards to the employment of all subcontractors/consultants
> who worked on the project, provide the date when each
> subcontractor/consultant began work on the project, the actual work
> each individual performed on the CHP Project by reference to
> particular Milestones set forth in the RO, and when their services
> were terminated.
>
> e. As to 14 (d) above, please provide the reason for the termination
> of each subcontractor or consultant from the CHP Project. If
> terminated for cause, please provide the specific reason for
> termination.

Dkt. No. 35-15 at 10-11.  Plaintiff objected to the interrogatory on the grounds that it was

overly broad, vague, and unduly burdensome.  <u>See</u> Dkt. No. 35-7 at 13.  Nevertheless,

plaintiff referred defendant "to business records produced in this matter which identify the persons assigned and/or hired to perform work at the Project, including all agreements governing such persons' work and time sheets and other project status reports reflecting such persons' work." Id.  In its supplemental responses, plaintiff provided the name of four individuals, their titles and duties, whether they were an employee or contractor, the date range they worked, and on which portions of the project.  See Dkt. No. 35-15 at 11-12.  Plaintiff also stated that it "has over 100 team members . . . across OnActuate's projects, including the subject Project.  These employees provide support, coordination, finance invoicing, and other back off and advisory duties on a project, but rarely get directly involved on a project. . . ." Id. at 12.

In its letter motion, defendant makes no argument as to why the information sought in interrogatory number 14 is relevant to its affirmative defenses or counterclaim. See Dkt. No. 35-23.  Rather, defendant reiterates that "Interrogatory No. 14 requested the identity of every OnActuate employee or subcontractor on the project, the specific work performed and whether they were terminated." Id. at 2.  Defendant contends that plaintiff has "only been responsive as to a few identities . . . .  While it is conceivable that further investigation would be necessary for some of the individuals, such position has not been shared, nor it is reasonable that no further details have been provided for **any** of the identified individuals . . . ." Dkt. No. 35-23 at 2-3.  In his affidavit, Scheuermann asserts that plaintiff's response to the interrogatory is incomplete and inaccurate "based on evidence [d]efendant possesses." Dkt. No. 35-1 at 8, ¶ 47. Specifically, Scheuermann states "that Nikhil Gupta, Sanjay Chouhan, Deepak Verma, Manish Agrawal, and Vinay Partap each performed critical tasks on Milestones I and 2,

[and p]laintiff should have specifically answered each employee's involvement in Interrogatory No. 14." Id. at 9, ¶ 56.  Similarly, he avers that "[p]laintiff's answers to Interrogatory No. 14 relating to its former employee, Harmeet Walia were incomplete as to the specific work in the milestones she performed . . . ." Id. at 9, ¶ 57.  Scheuermann contends that plaintiff's response was similarly incomplete as it relates to its employee Ian Shufflebotham.  See id. at 10, ¶ 59.  Scheuermann attests that "[p]laintiff advised [d]efendant that Nikhil Gupta would be a resource assigned to work on the project"; "Sanjay Chouhan also worked on the CHP Project"; and "[p]laintiff assigned additional personnel, Deepak Verma, Manish Agrawal, and Vinay Partap to diagnose and fix the problems[.]" Id. at 8-9 ¶¶ 48, 52, 55.

In reply, defendant states that "[t]he information requested . . . is relevant to [d]efendant's defense and counterclaim."  Dkt. No. 39 at 2.  Defendant contends that its requests regarding Gupta, Chouhan, Verma, Agrawal, and Partap "will establish exactly what work they performed on the CHP Project."  Id.  Defendant argues that because these employees were "identified in emails disclosed by [d]efendant in its initial" production and "reproduced again as part of [p]laintiff's initial" disclosure, "[p]laintiff has conceded the relevance of the sought-after information."  Id. at 3.

Plaintiff notes that "[i]n neither the Letter Brief nor the Scheuermann Affirmation does [defendant] acknowledge must less address [plaintiff's] objections to this Interrogatory."  Dkt. No. 36 at 15.  "[T]hat parties may not introduce arguments for the first time in reply is beyond well-established."  Krause, 2021 WL 5876678, at *2 (citing Gonzales v. Agway Energy Servs., LLC, 2019 WL 910669, at *2 (N.D.N.Y. Feb. 25, 2019) (collecting cases disregarding arguments raised for first time in reply brief).

"However, the Second Circuit has made it abundantly clear that a district court has discretion to consider a belatedly-raised argument." Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co., 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) (emphasis in original), aff'd, 374 F. App'x. 71 (2d Cir. 2010) (citing Ruggiero v. Warner-Lambert Co., 424 F.3d 249 (2d Cir. 2005)).  Here, plaintiff has been afforded the opportunity to file a sur-reply and, defendant, albeit briefly, raised interrogatory number 14 in its letter motion.  See Dkt. Nos. 35-23, 44.  As such, the Court will consider defendant's arguments in reply as they relate to interrogatory number 14.[2]  See Dkt. No. 39 at 2-3.

"The relevance standard is construed broadly 'to encompass any matter that bears on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case." Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co., No. 6:09-CV-853 (DNH/TWD), 2012 WL 12896163, at *2 (N.D.N.Y. Dec. 21, 2012) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  Part of defendant's counterclaim states that plaintiff assigned and identified "its company's resources to be dedicated to the project" but that "the four assigned and identified OnActuate Resources did not work on the Project."  Dkt. No. 25 at 10, ¶¶ 54, 56.  Rather, defendant claims that after the project had been commenced, it "learned that OnActuate had been using foreign subcontractors without its knowledge who lacked the required security clearance in [an] attempt to fix the multiple problems with its work."  Id. at 12, ¶ 73.  Defendant

---

[2] To the extent Scheuermann asserts in his affidavit that plaintiff's responses are inaccurate or incomplete, or that plaintiff "should have specifically answered each employee's involvement[,]" the Court concludes that this constitutes an improper legal argument and it will not be considered.  Dkt. No. 35-1 at 9, ¶56.  Further, Scheuermann's statements attesting to the precise assignment of, or work completed by, the named employees is not based on his personal knowledge and will not be considered by the Court. See id. at 8-9, ¶¶ 48, 52, 55; see also In re M. Silverman Laces, Inc., No. 01-CV-6209 (DC), 2002 WL 31412465, at *3 (S.D.N.Y. Oct. 24, 2002) (explaining that an affidavit is not based on personal knowledge because "his knowledge was based solely on information [] gained from reviewing documents and interviewing or deposing witnesses in the course of litigating this action.").

contends that the information it seeks in interrogatory number 14 concerning the five-named individuals "who actually worked on the [] Project" "is relevant to [its] defense and counterclaim" to "establish exactly what they work they performed on the CHP project" and the "attempt[s] to troubleshoot the multiple problems in [p]laintiff's test environments that prevented them from functioning." Dkt. No. 39 at 2-3. The Court agrees that knowing which individuals performed what work on the project is relevant to the underlying action.

Once relevance has been established, the non-movant must prove that information sought is overly burdensome or vague. See Condit v. Dunne, 225 F.R.D. 100, 105-06 (S.D.N.Y. 2004). As plaintiff asserts, providing the identity and job description for over 100 employees, with varying degrees of involvement on the project, is overly broad and burdensome. See Dkt. No. 36 at 15-16. However, plaintiff does not demonstrate that providing the requested information about the five aforementioned individuals, whose relevance has been demonstrated, would be overly burdensome. See Utica Mut. Ins. Co., 2012 WL 12896163, at *2 (citation and quotation marks omitted) ("To properly object to a discovery request as overly broad or unduly burdensome, a party must do more than simply [recite the] familiar litany that the [requests] are burdensome, oppressive or overly broad."). Accordingly, defendant's motion as to interrogatory number 14 regarding Nikhil Gupta, Deepak Verma, Manish Agrawal, Vinay Partap, and Sanjay Chouhan is granted.

Defendant also "respectfully submits" that plaintiff did not answer interrogatory number 14 with respect to Harmeet Walia and Ian Shuflebotham "accurately and completely[,]" and intentionally failed to address this argument in its response. Dkt. No.

39 at 2.  Beyond this assertion and conjecture, defendant identifies no legal authority that requires the Court to grant its motion to compel a "truthful answer[.]" Dkt. No. 39 at 2; Dkt. No. 35-23.  Defendant's motion to compel further response to interrogatory number 14 as it relates to Walia and Shufflebotham is, therefore, denied.

### 2. Interrogatories Numbers 15 and 16

Defendant seeks to compel plaintiff to respond to interrogatories numbers 15 and 16:

> 15.  Identify every OnActuate client for whom the company (OnActuate) had previously constructed a cloud-based information management warehouse using Microsoft Dynamics 365 F & O software prior to working on the CHP Project.

> 16.  Identify every OnActuate employee, subcontractor or consultant who worked on the CHP Project who had previously constructed a cloud-based information management warehouse using Microsoft Dynamics 365 F & O software prior to working on the CHP Project, and specify the client for whom the such construction was performed, when the work started and when the project was completed.

Dkt. No. 35-7 at 13.  In Scheuermann's affidavit, he explains that "[p]laintiff originally refused to answer [] Interrogatory Nos. 15 or 16 arguing several grounds including a bald claim that [d]efendant was seeking [p]laintiff's confidential business information." Dkt. No. 35-1 at 10, ¶ 63.  Scheuermann contends that during a conference between the parties, plaintiff agreed to draft a protective order and subsequently answer the interrogatories.  See id. at 11, ¶ 66.  Defendant does not raise interrogatory numbers 15 and 16 in its letter motion, mentioning them only in Scheuermann's affidavit and in reply.  See Dkt. Nos. 35-1, 35-23, 39.  Plaintiff nevertheless argues that it originally objected because the interrogatories "are vague, overly broad, and unduly burdensome . . . [but]

the main reason these Interrogatories are overly broad and unduly burdensome is because they are wholly irrelevant to this litigation." Dkt. No. 36 at 17.

Defendant has the initial burden of proving that interrogatories number 15 and 16 are relevant, see United States ex rel. Rubar v. Hayner Hoyt Corp., No. 5:14-CV-830 (GLS/CFH), 2018 WL 4473358, at *1-2, 7 (N.D.N.Y. Sept. 18, 2018), but defendant makes no argument in its letter motion explaining the relevance of information related to plaintiff's former clients or projects. See Dkt. No. 35-23. Nowhere in Scheuermann's affidavit does he explain why the information sought in interrogatory numbers 15 and 16 is relevant to any claims or defenses. See Dkt. No. 35-1 at 10-12. Rather, he contends that plaintiff agreed to respond to the interrogatories after filing a protective order.[3] See id. at 11, ¶ 66. In its reply, defendant argues that the information requested is

> highly relevant to [d]efendant's Counterclaim. Plaintiff was held out to be knowledgeable and experienced in this type. If either the company or its individually assigned employees or contractors working on the CHP Project had never successfully completed such work, it would support Defendant's counterclaim that it was ill-prepared to complete the CHP project with the resources assigned. Several original resources, including Patricia Moore and Lakshey Uppal, were abruptly removed from the project prior to the start.

Dkt. No. 39 at 3. Also in its reply, defendant contends that it properly raised interrogatory numbers 15 and 16 "since the brief referenced the accompanying Scheuermann Affirmation." Id. As explained, arguments made for the first time in reply are insufficient, and because defendant did not raise any arguments related to interrogatory numbers 15 and 16 in its letter motion, the motion could be denied on that ground alone. See supra at 10.

---

[3] The parties filed a protective order in April 2021. See Dkt. Nos. 27, 29.

Regardless, the Court determines that defendant has failed to demonstrate that the information sought in interrogatory numbers 15 and 16 is relevant. Initially, although not entirely clear, defendant appears to raise a breach of contract counterclaim. See Dkt. No. 25 at 7-13. "Breach of contract under New York law requires a party to allege (1) the existence of an agreement, (2) adequate performance of the contract by the [claimant], (3) breach of contract by the [opposing party], and (4) damages." Red Fort Cap., Inc v. Guardhouse Prods. LLC, 397 F. Supp. 3d 456, 478 (S.D.N.Y. 2019). Defendant has not demonstrated how knowing "every [] client" for whom plaintiff previously constructed a cloud-based information system is relevant to establishing whether a contract existed between the parties or whether it was breached. Dkt. No. 35-7 at 13; Dkt. No. 35-23. Similarly, it failed to show the relevance of the names of "every [] employee, subcontractor or consultant who worked on the CHP project who had previously constructed a cloud-based" system. Dkt. No. 35-7 at 13; Dkt. No. 35-23.

To be sure, "the bounds of permissible discovery in a civil action are generally broad." T.H. by Shepherd v. City of Syracuse, 5:17-CV-1081 (GTS/DEP), 2018 WL 3738945, at *2 (N.D.N.Y. Aug. 7, 2018) (citing Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir. 1992)). However, defendant has provided no case law or explanation to the Court as to how information about plaintiff's or its employees' past projects or clients, after the alleged breach of contract has occurred, would help to establish whether a contract existed, the adequacy of defendant's performance, whether plaintiff breached the contract, or the amount of damages. See Red Fort Cap., Inc, 397 F. Supp. 3d at 478. Therefore, defendant has not "demonstrate[d] at least the possibility of a nexus between the information sought

15

and the claims or defenses[.]" <u>Member Services, Inc. v. Security Mut. Life Ins.</u>, 3:06-CV-1164 (TJM/DEP), 2007 WL 2907520, at *4 (N.D.N.Y. Oct. 3, 2007); <u>see</u> <u>Krause</u>, 2021 WL 5876678, at *2 ("Making matters worse, whether in defendants' reply brief or in their attorney's affidavit, these arguments stacked end-to-end provide only *one* citation to any legal source.").  Accordingly, the motion to compel as it relates to interrogatory numbers 15 and 16 is denied.

### C.  Document Production

Defendant made the following document demands:

55. Provide copies of all communications and/or documents between OnActuate representatives, employees, agents and/or assigns relating to the stability of the environment constructed by OnActuate on the CHP project.

63. Provide copies of all documents and correspondence exchanged between OnActuate and Patricia Moore relating to the CHP Project.

64. Provide copies of all documents and correspondence exchanged between OnActuate and Lakshey Uppal relating to the CHP Project.

67. Provide copies of all documents and correspondence exchanged between OnActuate and Nikhil Gupta relating to the CHP Project.

68. Provide copies of all documents and correspondence exchanged between OnActuate and Deepak Verma relating to the CHP Project.

69. Provide copies of all documents and correspondence exchanged between OnActuate and Manish Agrawal relating to the CHP Project.

70. Provide copies of all documents and correspondence exchanged between OnActuate and Sanjay Chouhan relating to the CHP Project.

71. Provide copies of all documents and correspondence exchanged between OnActuate and Vinay Partap relating to the CHP Project.

98. Provide copies of all other documents OnActuate intends to rely upon throughout the course of this litigation.

Dkt. No. 35-6 at 11-14, 15.

Plaintiff objected to each document demand as being overly broad, vague, and unduly burdensome.  See Dkt. No. 35-8 at 16, 18-20, 26.  As to demand number 55, plaintiff specified that the phrases "stability of the environment" and "constructed" are vague.  Id. at 16.  However, it provided that "documents relating to the 'environment' configured by OnActuate are being served on Aeon with the Response."  Id. at 17.  As to demand number 98, plaintiff further objected "to the extent it is premature and seeks information regarding OnActuate's attorney's mental processes and strategy, as discovery has not yet been completed."  Id. at 26.  Plaintiff stated that it "has not made a determination as to its evidence and trial exhibits at this time.  OnActuate will supplement this response in compliance with the federal rules of civil procedure and disclose all documents it intends to offer into evidence in this case."  Id.  In plaintiff's first amended responses, it stated that it had not identified any documents responsive to demand numbers 63, 64, and 70.  See Dkt. No. 35-22 at 31.  As to demand numbers 67, 68, 69, and 71, plaintiff averred that it "produced documents responsive to the Request[s]."  Id. at 31, 33.

In its letter motion, defendant addresses only demand numbers 63 and 64.  See Dkt. No. 35-23 at 2.  Defendant contends that "[p]laintiff's oral representations are insufficient . . . [and] in some instances, such representation is illogical."  Id.  Defendant explains that the subjects of the requests, Patricia Moore and Lakshey Uppal, "were specifically assigned to the project in question. . . .  It is difficult to fathom that either no such documents exist or that they are so lost that [d]efendant has been unable to locate them since November 2020."  Id.

17

"[T]he court cannot compel production of evidence that does not exist."  Johnson

v. Miller, No. 9:20-CV-622 (LEK/ATB), 2021 WL 4803647, at *2 (N.D.N.Y. Sept. 2,

2021).  As the Eastern District of New York has stated, where a party "believes []

production is incomplete," the appropriate remedy is to

> ask for a declaration (or deposition) that outlines the practices and
> procedures used to collect and produce documents.  And on the basis of
> the answers received, outline to the Court the steps not taken, and identify
> with specificity the categories and types of documents that should have
> been, but were not, produced.  The remedy is not to demand production
> again and seek depositions based on the production that is ordered.

Sidman v. Concord Arena Parking, LLC, No. 15-CV-7426 (CBA/SJB), 2021 WL

1940255, at *3 (E.D.N.Y. May 11, 2021); accord Haroun v. ThoughtWorks, Inc., No. 20-

CV-0100 (LJL), 2020 WL 6828490, at *2 (S.D.N.Y. Oct. 7, 2020) ("Plaintiff can inquire at

deposition both about the documents that have been produced and those that have not

been produced and can review the document production itself for obvious gaps.  If it

creates a record, it may have a basis for discovery on discovery.").  Scheuermann

attests in his affidavit that "[t]he absence of documents is suspect" as it relates to

Patricia Moore and Lakshey Uppal but he provides no argument as to how plaintiff's

document searches were insufficient such the lack of responsive documents is

improper. Dkt. No. 35-1 at 15, ¶ 101.  "[T]he appropriate remedy is not to pound the

table and ask the Court to order additional production."  Sidman, 2021 WL 1940255, at

*3; see Doe v. Wesleyan Univ., No. 3:19-CV-01519 (JBA), 2021 WL 4704852, at *6 (D.

Conn. Oct. 8, 2021) (denying a motion to compel where "the plaintiff has come forward

with no factual basis for supposing that the production is incomplete.").

Although the appropriate response would have been for plaintiff to provide

greater information or detail about the searches it made through deposition or

18

declaration, the Court finds that the situation should be able to be fairly remedied by having plaintiff supplement its response to demand numbers 63 and 64, providing details about the steps it took to search its records for responsive documents.  See Ford v. Rensselaer Polytechnic Inst., No. 1:20-CV-470 (DNH/CFH), 2022 WL 715779, at *17 (N.D.N.Y. Mar. 10, 2022) ("[The d]efendant must detail what efforts it took to 'search' for responsive documents when it issued its response to the document demand.").  If defendant is not satisfied with the supplemental response, the appropriate remedy is for defendant to seek a deposition and question plaintiff about the searches it has conducted.  Accordingly, as to document demand numbers 63 and 64, defendant's motion to compel is granted to the limited extent as outlined herein.

Defendant does not address document demand numbers 55, 67-71, or 98 in its letter motion.  See Dkt. No. 35-23 at 2-3.  In Scheuermann's affidavit, he states nothing more than conjecture—that it "is questionable" and "reasonable to expect" that plaintiff would have documents responsive to demand numbers 67 through 71 because the employees named in the requests worked on the project and defendant has e-mails indicating such employment.  Dkt. No. 35-1 at 15-16, ¶¶ 102-109.  In its reply, defendant contends that is has met its burden to "cast sufficient doubt" on the adequacy of plaintiff's records search because defendant "firmly believes additional documents" exist.  Dkt. No. 39 at 5.  As stated, arguments raised for the first time in reply are insufficient.  See Krause, 2021 WL 5876678, at *2.  However, given the Court's discretion, the Court addresses these arguments and concludes that they are unavailing.  See Dkt. No. 39 at 4-5; see also Ekstein v. Polito Ass. LLC, No. 20-CV-

1878 (JCM), 2022 WL 783000, at *3 (S.D.N.Y. Mar. 15, 2022) ("District courts have broad discretion to manage the scope of discovery and decide motions to compel.").

Defendant contends that because the employees named in the demands are included in e-mail conversations regarding the project, and several of them worked from a different country with a different time zone, there must be internal communications involving the employees.  See Dkt. No. 39 at 5.  Scheuermann attests that for document demand numbers 67-69 and 71, although plaintiff responded that it produced responsive documents, "no internal documents or correspondence" were produced. Dkt. No. 35-1 at ¶¶ 108-09.  As the moving party, defendant must demonstrate that plaintiff's searches were insufficient.  See Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc., No. 08-CV-1533 (BSJ/JCF), 2011 WL 2623458, at *1 (S.D.N.Y. June 21, 2011) (emphasis added) ("[I]t is up to the requesting party to show that the search was inadequate. . . .  [The plaintiffs] have proffered no evidence that the steps taken by the defendants were in any way insufficient."); see Maurer v. Sysco Albany, LLC, No. 1:19-CV-821 (TJM/CFH), 2021 WL 2154144, at *4-8 (N.D.N.Y. May 27, 2021) (explaining the various searches and search terms already used by the parties as well as their suggested solutions).

Plaintiff plainly states that it "has not identified any documents responsive to" demand number 70, and that it "has produced documents responsive" to demand numbers 67-69, and 71.  Dkt. No. 44 at 4; Dkt. No. 36-14 at 15-16; McMillian v. Cnty. of Cortland, No. 9:04-CV-0827 (PAM/GHL), 2008 WL 4283379, at *1 (N.D.N.Y. Sept. 16, 2008) (A party "cannot be compelled to produce documents they do not have.").  In reviewing plaintiff's document index, there are documents noted to be responsive to

20

requests number 68, 69, and 71.  <u>See</u> Dkt. No. 36-15 at 8, 11.  However, despite plaintiff stating that it produced documents responsive to demand number 67, there are no responsive documents identified in the document index.  <u>Compare</u> Dkt. No. 36-14 at 15, <u>with</u> Dkt. No. 36-15.  As explained in relation to interrogatory number 14, which employees worked on the project and to what extent is relevant to defendant's affirmative defenses and counterclaim, and, therefore, documents relevant to that information must be produced.  <u>See</u> <u>supra</u> at 11.  Accordingly, plaintiff must either supplement its response to indicate that no responsive documents exist and the explain the steps it took to search for such documents or, if it determines such documents exist, produce the documents responsive to document demand number 67.

To the extent defendant believes that documents exist related to demand number 70, plaintiff must supplement its response, providing answers about the steps it took to search its records.  If defendant believes plaintiff is being dishonest or providing incomplete answers after receiving its supplemental response, the appropriate remedy is for defendant to seek a deposition and question plaintiff about the searches it has conducted and whether any of the requested documents exist.  However, because plaintiff has stated that it produced documents responsive to demand numbers 68, 69, and 71, and those demands are identified in plaintiff's document index, defendant's motion to compel as it relates to those demands is denied.  Defendant's motion is granted as it relates to demand number 70 to the limited extent outlined herein.

As to document demand number 55, defendant did not raise it in its letter brief or in reply.  <u>See</u> Dkt. Nos. 35-23, 39.  The only mention of demand number 55 is in Scheuermann's affidavit wherein he states that plaintiff agreed to serve documents

responsive to the demand but has not.  <u>See</u> Dkt. No. 35-1 at 17, ¶ 116-121.  Absent any legal argument as to why defendant is entitled to the documents it seeks, defendant has not met its burden of proving relevance.  As there is no legal argument properly before the Court regarding document demand number 55, any request related thereto is denied.

As to document demand number 98, defendant does not raise it in its letter motion.  <u>See</u> Dkt. Nos. 35-23.  Scheuermann summarily asserts that, as to demand number 98, "[a]fter a year of litigation, [p]laintiff should have identified certain documents that it will rely on to support its causes of actions and use to defend [d]efendant's counterclaims."  Dkt. No. 35-1 at 16, ¶ 112.  In its reply, defendant contends that "[t]his request ensures that there will be no surprise documents in this case, and nothing more."  Dkt. No. 39.  Fed. R. Civ. P. 26 requires parties to disclose the name, address, and telephone number of all witnesses; the designation of witnesses a party intends to present by deposition; and "an identification of each document or other exhibit, including summaries of other evidence--separately identifying those items the party expects to offer and those it may offer if the need arises."  FED. R. CIV. P. 26(a)(3)(A).  These mandatory disclosures are required "at least 30 days before trial."  FED. R. CIV. P. 26(a)(3)(B).  A trial date has not been set in this matter.  <u>See</u> Dkt. Nos. 28, 30; Text Entry on 06/23/2021.  Defendant provides no legal basis requiring plaintiff to produce its trial documents at this juncture.  <u>See</u> Dkt. No. 35-23, 39.  As such, the motion to compel, as it relates to document demand number 98, is denied.

**D.  Document Index**

22

In Scheuermann's affidavit, he states that "[p]laintiff agreed to organize the disclosed bate[s] stamped documents into an index[.]"  Dkt. No. 35-1 at 13, ¶ 89. Plaintiff has since produced a document index; therefore, the request is denied as moot. See Dkt. No. 36-15; see also Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 314 F.R.D. 85, 88 (S.D.N.Y. 2016) ("Since the respondent has agreed to provide the requested discovery, the motion to compel has been mooted.").

### E.  Privilege Log

Rule 26 requires that

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i)      expressly make the claim; and
(ii)     describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

FED. R. CIV. P. 26(b)(5)(A) (spacing added).  Scheuermann stated in his affidavit that "[p]laintiff agreed to produce" a privilege log.  Dkt. No. 35-1 at 14, ¶ 94.  This bare assertion, even if true, does not warrant granting a motion to compel, and defendant does not make any legal arguments in its letter motion with respect to a privilege log. See Dkt. No. 35-23.  Nevertheless, plaintiff stated that it "is not withholding any documents and communications on the basis of privilege" and "agreed that, in the event it identified materials that it was withholding on the basis of privilege, it would produce a privilege log, as required under the Federal Rules."  Dkt. No. 36 at 19-20; see Dkt. No. 44 at 3.

"The failure of a party to list a document withheld during the course of discovery on a privilege[] log, or to provide a privilege log altogether, ordinarily results in a finding that the privilege otherwise asserted [h]as been waived." Feacher v. Intercontinental Hotels Grp., No. 3:06-CV-0877 (DEP), 2007 WL 3104329, at *5 (N.D.N.Y. Oct. 22, 2007); see also Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc., 331 F.R.D. 218, 228 (E.D.N.Y. 2019) (collecting cases stating the same).  Plaintiff notes that it is withholding "communications exchanged between OnActuate and its litigation counsel." Dkt. No. 44 at 3.  This Court has explained that "parties should not be required to list on a privilege log, on an ongoing basis, communications between attorney and client once litigation has commenced." Towner v. Cnty. of Tioga, No. 3:15-CV-0963 (GLS/DEP), 2018 WL 1089738, at *6 (N.D.N.Y. Feb. 27, 2018) (emphasis added).  As plaintiff contends that it is not withholding any communications on the basis of privilege, the Court assumes that any privileged attorney-client communication occurred after the commencement of this action.  Therefore, to the extent plaintiff has no documents responsive to defendant's requests that are being withheld on the ground of privilege, defendant's motion to compel is denied.  However, plaintiff is cautioned that its failure to provide a privilege log constitutes a waiver of any future assertion of the privilege as to "all responsive documents" that have been produced. FG Hemisphere Assocs., L.L.C. v. Republique Du Congo, No. 01-CV-8700 (SAS/HBP), 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005).  Further, if defendant requests additional documents that plaintiff believes are privileged, it must produce a privilege log. See FED. R. CIV. P. 26(b)(5)(a).

**F. Sanctions**

24

To the extent defendant asks the Court to impose sanctions on plaintiff, the motion is denied.  See Dkt. No. 35-23 at 3-4.  "District courts have broad discretion to enforce discovery obligations and may impose sanctions on the disobedient party."  Cipriani v. Buffardi, No. 9:06-CV-0889 (LEK/DRH), 2008 WL 656742, at *1 (N.D.N.Y. Mar. 6, 2008).  "If the motion [to compel] is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  FED. R. CIV. P. 37(a)(5)(C).  "Given the mixed result of defendant['s] motion"—prevailing on some requests and failing on others—the Court finds it appropriate for each party to bear its own expenses.  Safespan Platform Sys., Inc. v. EZ Access, Inc., No. 06-CV-726A, 2011 WL 7473467, at *5 (W.D.N.Y. Dec. 30, 2011), report and recommendation adopted, 2012 WL 777305 (W.D.N.Y. Mar. 8, 2012); see also Perros v. Cnty. of Nassau, No. 15-CV-5598 (GRB/AKT), 2021 WL 4480666, at *8 (E.D.N.Y. Sept. 30, 2021) (collecting cases declining to apportion expenses under Rule 37(a)(5)(C)).

## V.  Conclusion

Wherefore, for the reasons set forth herein, it is hereby

**ORDERED**, that defendant's motion to compel, Dkt. Nos. 35-1 and 35-23, is

**GRANTED IN PART**:

Within **thirty (30) days** of the filing date of this Memorandum-Decision & Order, plaintiff shall (1) respond to interrogatory number 14 as it relates to Nikhil Gupta, Sanjay Chouhan, Deepak Verman, Manish Agrawal, and Vinay Partap; and

(2) supplement its responses or provide responsive documents to demand

numbers 63, 64, 67, and 70; and

**DENIED IN PART**:

(1) defendant's motion to compel the production of a document

index is **DENIED AS MOOT**; and

(2) defendant's motion to compel the production of a privilege log is **DENIED**;

and

(3) defendant's motion to compel as it relates to sanctions against plaintiff is

**DENIED**; and

the remainder of defendant's motion to compel is **DENIED**; and it is further

**ORDERED**, that

The Clerk of the Court serve this Memorandum-Decision & Order on parties in

accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: March 23, 2022
    Albany, New York

Christian F. Hummel
U.S. Magistrate Judge