UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ONACTUATE CONSULTING, INC.,

                         Plaintiff,

      v.                                                 1:20-CV-508
                                                          (LEK/CFH)
AEON NEXUS CORPORATION,

                        Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Condon Tobin Sladek Thornton Nerenberg<br>8080 Park Lane Ste. 700<br>Dallas, Texas 75231<br>Attorneys for plaintiff | JUSTIN HANNA, ESQ. |
| Phillips Lytle LLP<br>Omni Plaza<br>30 South Pearl Street<br>Albany, New York 12207<br>Attorneys for plaintiff | MARC H. GOLDBERG, ESQ. |
| The French Firm PC<br>125 Wold Road, Ste. 103<br>Albany, New York 12207<br>Attorneys for defendant | BRETT D. FRENCH, ESQ. |
| School Administrators Association<br>New York State<br>8 Airport Blvd.<br>Latham, New York 12110<br>Attorneys for defendant | ARTHUR P. SCHEUERMANN, ESQ. |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

# MEMORANDUM-DECISION & ORDER[1]

Plaintiff On Actuate Consulting Inc. ("On Actuate") filed a motion, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 37 to compel[2] defendant Aeon Nexus Corporation ("Aeon") and for sanctions relating to defendants' alleged failure to comply with discovery obligations.  See Dkt. No. 62.  Defendant opposed by letter brief.  See Dkt. No. 63.[3]  For greater detail regarding the underlying claims in this suit, reference is made to the plaintiff's complaint and defendant's amended answer.  See Dkt. Nos. 1, 25.[4]  For the reasons detailed herein, plaintiff's motion to compel is granted in part and denied in part.

---

[1]  The Court's citation to the parties' briefing is to the pagination generated by the Court's electronic filing and case management program ("CM/ECF"), located at the header of each page, not to the pagination of the individual documents.

[2]  Also pending is defendant's motion to compel and for leave to file late expert disclosure, Dkt. No. 75, and plaintiff's motion to strike defendant's expert disclosure, Dkt. No. 76.  The parties each opposed those motions.  See Dkt. No. 77-4 (defendant's motion in opposition to plaintiff's motion to strike/preclude late expert disclosure); Dkt. No. 78 (plaintiff's motion in opposition to defendant's motion to compel and for late expert disclosure). These motions will be addressed in a separate decision.

[3]  Going forward, the Court requests that all parties' submissions to the Court be double spaced.

[4]  Going forward, at the start any declaration, counsel is to list each exhibit by its exhibit letter and title and provide a very brief (no more than a few words) description of the document.  This is to be done before, and independently from, the declaration's narrative such that the Court can expeditiously identify, assess, and reference the submitted exhibits.

    Counsel for plaintiff's declaration exhibits: (1) Exhibit A, Dkt. No. 62-3, Plaintiff's First Set of Interrogatories; (2) Exhibit B, Dkt. No. 62-4 defendant's supplemental document production index; (3) Exhibit C, Dkt. No. 62-5, plaintiff's "export report" of metadata for defendant's e-mails, dkt. no. 62-2 ¶; (4) Exhibit D, Dkt. No. 62-6, plaintiff's "export report" of metadata for CHP e-mail production "set to or received from the aeonnexus.com domain," dkt. no. 62-2 ¶12; (5) Exhibit E, Dkt. No. 62-7, Plaintiff's second set of interrogatories; (6) Exhibit F, Dkt. No. 62-8, defendant's responses to plaintiff's second request for production of documents; (7) Exhibit G, Dkt. No. 62-9, October 21, 2022, letter from Mr. Hanna to Mr. Scheuermann; (8) Exhibit H, Dkt. No. 62-10, defendant's supplemental responses and objections to plaintiff's first and second requests for interrogatories; (9) Exhibit I, Dkt. No. 62-11, November 8, 2022, letter from Mr. Scheuermann to Mr. Hanna; (10) Exhibit J, Dkt. No. 62-12, December 13, 2022, letter from Kendal Reed to Mr. Scheuermann; (11) Exhibit K, Dkt. No. 62-13, December 14, 2022, letter from Mr. Scheuermann to Mr. Reed, Mr. Hanna, and Lindsay Hardy; (12) Exhibit L, Dkt. No. 62-14, January 22, 2020, e-mail from Meghan Barkley to Dennis Lacey, Naeem Shafi, CC'd to Polly Feigenbaum; (13) Exhibit M, Dkt. No. 62-15, February 7, 2020, letter from Michelle C. Spillman to Polly Feigenbaum.

    Counsel for defendant's declaration exhibits: (1) Exhibit A, Dkt. No. 63-2, Plaintiff's Subpoena Duces Tecum to CHP; (2) Exhibit B, Dkt. No. 63-3, September 7, 2022, letter from plaintiff to defendant; (2) Exhibit B, September 7, 2022, letter from Mr. Hanna to Mr. Scheuermann; (3) Exhibit C, Dkt. No. 63-4, September 19, 2022, letter from Mr. Scheuermann to Mr. Hanna; (4) Exhibit D, Dkt. No. 63-5, September 30, 2022, defendant's Second Request for Production and Second Set of Interrogatories; (5) Exhibit E,

## II.  **Arguments**

### A.  **Plaintiff's Background & Arguments**

Plaintiff seeks the Court to compel defendant to produce an order "(i) compelling Aeon to produce supplemental discovery responses, documents, and a document index within five days (ii) overruling Aeon's general objections and (iii) awarding OnActuate sanctions in the form of attorneys' fees and costs in connection with this motion."  Dkt. No. 62-1 at 3.

On September 14, 2020, plaintiff served its "First Requests for Production and First Set of Interrogatories." Dkt. No. 62-2 at 1; Dkt. No. 62-3.  Plaintiff provides that defendant's first production did not include any Bates stamps on its pages, but following a meet and confer, defendant "agreed to produce the native documents."  Dkt. No. 62-2 at 2 ¶6.  On April 25, 2021, plaintiff served "supplemental document production, as well as a letter requesting Aeon supplement its production to include the native documents and other documents that, based upon review of the production, were not produced." Id. ¶7 (citing Dkt. No. 36-11).  On June 3, 2021, defendant served a supplemental production, "with its native files and other documents that were demonstrably missing

---

Dkt. No. 63-6, April 20, 2020, e-mail; (6) Exhibit F, Dkt. No. 63-7, September 10, 2019, e-mail; (7) Exhibit G, Dkt. No. 63-8, defendant's third request for production; (8) Exhibit H, Dkt. No. 63-9, November 14, 2020, plaintiff's responses to defendant's Second Request for Production and Answers to defendant's Second Request for Interrogatories; (9) Exhibit I, Dkt. No. 63-10, November 25, 2022, letter from defendant to plaintiff; (10) Exhibit J, Dkt. No. 63-11, December 12, 2022, letter from defendant to plaintiff; (11) Exhibit K, Dkt. No. 63-12, Omar Usmani's deposition exhibits 52-54, 56, 64, 72, 80; (12) Exhibit L, Dkt. No. 63-13, Mr. Usmani deposition exhibits 50-51, 65, 69, 77, 81-82; (13) Exhibit M, Dkt. No. 63-14, December 29, 2022, letter from defendant to plaintiff; (14) Exhibit N, Dkt. No. 63-15, December 30, 2022, letter from plaintiff to defendant; (15) Exhibit O, Dkt. No. 63-16, January 4, 2023, letter from plaintiff to defendant; (16) Exhibit P, Dkt. No. 63-17, CHP subpoenaed documents folder of support tickets; (17) Exhibit Q, Dkt. No. 63-18, defendant's Amended Supplemental Objections/Responses to plaintiff's 2nd RFP.

from its initial production[,]" but this supplemental production "contain[ed] several GB of data not previously produced," was not Bates stamped, "and was produced of several layers of files and subfiles." Id. ¶8.  Plaintiff provides that defendant did not initially produce a document index, but "after prodding," defendant produced a document index that "fails to designate the responsiveness of the native emails" making it "unclear whether and to what extent the native emails respond to OnActuate's requests for production, if any." Id. ¶9.  "As a result," plaintiff "was forced" to use an e-discovery platform, which showed that many of the e-mails – 1,106 – in the supplemental production "were forwarded to a specially created email account: <oalitigation@aeonnexus.com>" which "altered the metadata of the underlying responsive email" making it "impossible to determine whether the emails have been modified or corrupted to their production[.]" Id. ¶¶10-11.  After serving a subpoena on California Highway Patrol ("CHP"), plaintiff realized "that there are Aeon emails produced by CHP that were not produced by Aeon, which are responsive to OnActuate's document requests[.]" Id. ¶¶ 12-13.

      Plaintiff also notes that defendant produced "very few" internal e-mails.  Dkt. No. 62-2 ¶15.  Defendant "created aeonnexus.com email accounts for OnActuate resources on the Project.  Importantly, Aeon Nexus required On Actuate resources to communicate through these email accounts." Id. ¶16.  Plaintiff's second request for production of documents and second set of interrogatories "targeted . . . internal communications between Aeon employees, as well as documents evidencing their work on the Project, among other items." Id. ¶ 17.

Plaintiff further provides that, in discussing its discovery concerns on December 7, 2022, counsel for defendant "represented that Aeon deleted all email accounts assigned to OnActuate employees, upon OnActuate' termination." Dkt. No. 62-2 at ¶¶ 23-24.  Plaintiff provides that defendant "has not indicated when it deleted OnActuates email accounts" but "at the time of Aeon's purported termination, January 22, 2020, both parties had already engaged counsel." Id. ¶25.  Plaintiff provides that it is "unclear" whether defendant "also deleted the email accounts of former employees[] Kathryn Egan, Kiran Kothamachu, and Kohan Sakamuri" as "[t]here are very few, if any, internal emails involving these individuals." Id. ¶27.

As to the "general objections," plaintiff contends that defendant's boilerplate objections submitted in response to plaintiff's "Second Request for Document Requests" and "'subject to' response" are "deficient because it (i) fails to identify which, if any, of the 10 purported 'general objections' relate to a specific request, (ii) fails to identify the extent to which Aeon is responding to a particular request, if any; and (iii) fails to identify the documents that are being withheld on the basis of the purported objection(s)." Dkt. No. 62-1 at 7.  Plaintiff further argues that defendant's objections violate Fed. R. Civ. P. 34(b)(2)(B), (C). Id.  Plaintiff contends that, due to the general objections, plaintiff "is unable to determine if and or why Aeon has withheld documents responsive to its requests," and seeks the Court to order "Aeon to fully and correctly answer all document request [sic] and to produce all documents that respond to all document requests." Id. at 8.

Plaintiff next argues that defendant's responses to document requests 67, 68, 69, 70, 73, 74, 76, 77, 81, 84, and 85 are inadequate. Dkt. No. 62-1 at 8.  Plaintiff argues

5

that in response to its request "for the specific, relevant, and material documents that Defendant contends supports its claims and defenses in this lawsuit, Defendant merely points to its entire production consisting of thousands of documents, claiming that 'all documents and communications have been previously provided.'"  Dkt. No. 62-1 at 8. Plaintiff contends that defendant agreed, but failed to "organize disclosed documents into an index with define [sic] categories and descriptions" as the index it provided "failed to designate the responsiveness of native emails."  Id.

Next, plaintiff contends that defendant's response to interrogatory number 21 is "misleading," because the documents CHP produced "reveal[s] Aeon is withholding hundreds of communications from production that are pertinent and relevant to this litigation."  Dkt. No. 62-1 at 9.  Further, plaintiff contends that defendant "disabled and deleted email accounts utilized during the CHP project, and . . . has not made any attempt to retrieve those emails."  Dkt. No. 62-1 at 9.  Plaintiff argues that defendant "was put on notice of potential litigation immediately after terminating its relationship with OnActuate[,]" making its "claims that it has searched archives and servers . . . misleading and an attempt [sic] defy its discovery obligations."  Id. at 9.

B. **Defendant's Background & Arguments**

Defendant contends, by letter brief, that it has not withheld responsive documents from plaintiff.  See Dkt. No. 63 at 1.  In response to plaintiff's argument the documents subpoenaed from CHP show that defendant has withheld discoverable and relevant documents, defendant argues that plaintiff "refused to identify or disclose the documents until it deposed Aeon's Chief Executive Officer, Omar Usmani on December

6

20, 2022, the day before OnAcutate was required to file its instant Motion to Compel." Id.  Defendant contends that because of this, it was "burdened to guess what documents may have been overlooked in its prior disclosures." Id.  Defendant says that this search, through use of e-discovery software, "produced a single email" and that "every document responsive to OnActuate's claims and defenses has been produced." Id.

As to plaintiff's "eleven requests"[5] in its second request for documents (document requests 67, 68, 69, 70, 73, 74, 76, 77, 81, 84, and 85), defendant avers that "no additional responsive documents have been found."  Dkt. No. 63 at 1-2.  Defendant further contends that the "missing" e-mails that plaintiff received from CHP/the documents "presented during Mr. Usmani's deposition," "once disclosed, revealed that they were not relevant to OnActuate's claim or defense or the Eleven Requests."  Id. at

---

[5] Request 67 seeks "All documents and communications evidencing your attempts to retain another independent contractor to replace OnActuate or otherwise complete the project."  Request 68 seeks "All documents and communications exchanged between Aeon and Mohan Sakamuri relating to the Project."  Request 69 seeks "All documents and communications exchanged between Aeon and Kiran Kothamachu concerning the Project."  Request 70 seeks "All documents and communications exchanged between Aeon and Linda Savona concerning the Project."  Request 73 seeks "All documents evidencing CHP's security protocols and required clearances, which Aeon contends OnActuate violated."  Request 81 seeks "All documents and communications relating to any concerns with the amount of hours required to fix OnActuate's allegedly shoddy work and complete the Project."  Request 74 seeks "All communications between Aeon and CHP concerning OnActuate's alleged failure to comply with CHP's security protocols and required clearances."  Request 76 seeks "All documents evidencing travel and accommodation of Aeon, its employees and contractors to perform work on-site at the Project."  Request 77 seeks "All communications concerning or evidencing Aeon's assignment of Linda Savona as project manager for the Project."  Request 81 seeks "All documents and communications relating to any concerns with the amount of hours required to fix OnActuate's allegedly shoddy work and complete the Project." Request 84 seeks "All communications between Aeon – including Aeon's attorneys – and the following persons concerning this lawsuit: a. Audrey Kagiyama, CHP b. Eric Anderson, CHP c. Rich Black, Microsoft d. Tara Hamby, Microsoft e. Ian Sufflebotham f. Mohan Sakamuri g. Kiran Kothmachu."  Request 85 states, "To the extent such materials have not been produced, all documents in Aeon Nexus's possession, custody, or control that Aeon Nexus may use to support its claims and/or defenses, including but not limited to the following categories identified in Aeon Nexus's initial disclosure responses: a. Text messages b. Voicemail files c. Mail d. Electronic Mail e. Draft contracts between the parties. f. Financial documents g. Non-privileged notes and memoranda."  Dkt. No. 62-7 at 12-14.
73, 81, 84, 85

2; 4. Instead, they "were generated after OnActuate was fired from the CHP Project, with most of the emails dated between March 2020 and June 2020" and "primarily involved Aeon's completion of the CHP Project and focused on Milestone 6 covering April 2020 through June 2020." Id. at 2, 5.

As for requests 67, 68, 69, 70, 73, 81, 84, and 85, defendant asserts that beyond the one e-mail (with attachments) it located through use of e-discovery software, defendant has "not identified or located any additional documents responsive to OnActuate's Requests Nos. 67-70, 73, 81, 84, and 85," meaning that plaintiff is "challenging the veracity of Aeon's sworn statements that it has not identified any further documents responsive to these Requests," an argument defendant asserts to be "unavailing." Dkt. No. 63 at 3.

Defendant further provides, "with the exception of OnActuate's Request No. 73 . . . and No. 74 . . . no documents in OnActuate's Eleven Requests would be in the custody or possession of CHP." Dkt. No. 62 at 4. As to requests 74, 76, and 77, defendant contends that it already advised plaintiff that it did not identify any responsive documents, and that plaintiff is challenging the veracity of Aeon's sworn statements" which "lacks merit." Dkt. No. 63 at 2.

Defendant also contends that, "given the limited number of responsive documents to OnActuate's Eleven Requests there is no purpose in generating an index as requested by OnActuate because of the limited number of relevant documents that were identified. Moreover, each document produced corresponded to each of OnActuate's Requests as set forth in Aeon's Amended and Supplemental Objections [sic]/Responses." Dkt. No. 63 at 6.

In response to plaintiff's arguments regarding defendant's deactivation of OnActuate employees' Aeon accounts "upon OnActuate's firing on January 22, 2020," defendant contends that "Aeon has a limited number of e-mail licenses"; thus, "when an employee . . . [is] separated from Aeon," the "standard practice" for Aeon is that the email account is deactivated.  Id. at 6.  Defendant provides that the OnActuate email accounts "were deactivated within two days of OnActuate's termination, and two weeks before OnActuate sent its demand letter[.]"  Id.  Defendant further contends that plaintiff "never sent a preservation of evidence letter to Aeon before it filed the instant lawsuit in May 2020."  Id.

Addressing interrogatory 21, defendant argues that "there is nothing misleading about [Ms. Usmani]'s statements or actions" in answering interrogatory 21 by "explain[ing] the steps she took at the time in searching Aeon's electronic and hard copy files."  Dkt. No. 63 at 6.  Aeon provides that Ms. Usmani's affidavit "further expounds on the processes she used throughout the litigation regarding discovery, and especially the searches she performed after Aeon obtained e-discovery software."  Id.  Defendant contends that it is "a small company that had never been party to a lawsuit," circumstances which render Ms. Usmani's "search techniques and answer to Interrogatory No. 21 . . . entirely reasonable."  Id.

Finally, defendant contends that sanctions are inappropriate because defendant "has not been dilatory[,]" repeatedly asked plaintiff for the "documents/emails that OnActuate claimed were being withheld so it could conduct further searches and supplement its disclosures[,]" and attempted "to formulate new searches based on the review of the documents in question."  Dkt. No. 63 at 6-7.  It argues, by contrast, that

9

plaintiff did not provide any documents until December 20, 2022, "the day before OnActuate was required to filed [sic] its Motion to Compel to present some emails during the deposition of Omar Usmani." Id. at 7.  Further, defendant contends it "manually searched its records and produced responsive documents . . . to the best of its ability"; "organized and labeled the documents it located to correspond to the 60 categories in OnActuate's 1st RFP as required by Fed. R. Civ. P. §34(b)(2)E)"; disclosed all documents in native form, and "[a]lthough not required under the federal rules, at OnActuate's request, Aeon then spent additional significant time preparing an index which it sent in September 2021," which plaintiff did not challenge until this motion. Id. Further, defendant argues, even if the CHP disclosure "did contain[] responsive emails to OnActuate's claims and defenses or its Eleven Requests, OnActuate now possess the emails," "has possessed documents in CHP's subpoenaed records since July 2021," and has suffered no prejudice. Id. at 8.

In response to plaintiff's arguments regarding general objections, defendant contends that it was "preserving the record" in its Response to OnActuate's Second Request for Production," but that "in its recent Amended and Supplemental Objections and Responses to OnActuate's 2nd RFP, Aeon removed its general objections and included specific objections to each of OnActuate's requests that form this motion." Dkt. No. 63 at 2.  In sum, defendant avers, it has "produced every responsive document that it possesses concerning OnActuate's 1st and 2nd RFP." Id.

## II.  Legal Standards

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") Rule 26(b)(1) states, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .  Information within this scope of discovery need not be admissible in evidence in order to be discoverable." Fed. R. Civ. P. 26(b)(1). "Under Rule 37, following a good-faith effort to meet and confer, upon to all parties notice," "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a). "'Motions to compel made pursuant to Rule 37 are 'entrusted to the sound discretion of the district court.'" Harris v. Bronx Parent Hous. Network, Inc., No. 18-CV-11681, 2020 WL 763740, at *1 (S.D.N.Y. Feb. 14, 2020) (quoting United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000)).  A district court has broad latitude to determine the scope of discovery and to manage the discovery process.'" Tromblee v. The State of New York, et al., No. 1:19-CV-638(BKS/CFH), 2022 WL 2818222, at *2 (N.D.N.Y. July 19, 2022) (quoting EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012) (additional citation omitted)).  "Motions to compel made pursuant to Rule 37 are 'entrusted to the sound discretion of the district court.'" Id.  (quoting Harris v. Bronx Parent Hous. Network, Inc., No. 18-CV-11681, 2020 WL 763740, at *1 (S.D.N.Y. Feb. 14, 2020) (additional citation omitted)).

### III.  Discussion

### A.  General Objections

As to plaintiff's arguments regarding defendant's general objections to plaintiff's second request for document requests, "[g]eneral objections to discovery requests are not favored."  See, e.g., Barberan v. NationPoint, No. 07CIV11595(KMK/LMS), 2013

WL 12446291, at *2 (S.D.N.Y. Aug. 8, 2013) (citing White Cap Constr. Supply, Inc. v. Tighton Fastener & Supply Corp., No. 8:08-CV-264, 2009 WL 3836891, at *2 n.1 (D. Neb. Nov. 13, 2009)). "After the December 1, 2015[,] amendments to the Rules, '[g]eneral objections should be rarely used" unless "each such objection applies to each document request . . . .'" Lombardo v. R.L. Young, Inc., No. 3:18 CV 188 (JBA), 2019 WL 4233568, at *3 (D. Conn. Sept. 6, 2019); see also Sovereign Cape Cod Invs. LLC v. Eugene A. Bartow Ins. Agency, Inc., No. 20-CV-03902 DGJMW, 2022 WL 624553, at *3 (E.D.N.Y. Mar. 3, 2022) (quoting Fischer v. Forrest, 14 Civ. 1304 (PAE) (AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017); (citing Fischer v. Forrest, 14 Civ. 1304 (PAE) (AJP), 14 Civ. 1307 (PAE) (AJP), 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017) ("Judge Peck's shot across the bow of litigators underscored that Rule 34 no longer allows parties to assert generalized objections to discovery requests. That is, generalized objections peppered in a response and objection in scattershot form—seemingly applying to all demands rather than being tailored to particular demands—violate the rule. The exception to this rule—as noted by Judge Peck and other subsequent courts—is that general objections may be appropriate only if the objection applies to every response to every document request.") (internal citations omitted)).

  Here, defendant does not dispute its use of general objections and nor argue that its use fell within the exception – that the objection applies to every response to every document request.  Dkt. No. 63 at 2.  Rather, defendant contends that it was "preserving the record," and that in its later response, it "removed its general objections and included specific objections" to each request, contending that "Aeon has corrected

OnActuate's objections." Id.  Defendant also asserts that it has produced all documents responsive to plaintiff's first and second requests for production.  See id.; dkt. no. 63-18.

The Court agrees with plaintiff that defendant's general objections are improper; therefore, the Court will not consider them.  However, this decision appears to be of little practical consequence because defendant filed its amended and supplemental objections to plaintiff's second request for production on January 4, 2022, after plaintiff filed its instant motion, and contends that it no longer asserted general objections but raised specific objections.  Plaintiff has not advised the Court her position with respect to the sufficiency of defendant's amended and supplemental objections.  The Court agrees with defendant that, although the first response was violative of Rule 34, and the Court does not condone the use of general objections, defendant has since supplemented its objections.  The Court will consider the specific objections.  The Court does not find any sanction with respect to this use of general objections warranted at this time and is confident defendant will not repeat this in the future.

B.  **Index**

Plaintiff contends that defendant's index is deficient as it "makes no attempt to identify the documents, indicate when those documents were provided and where those documents were located," and was not "functional" because it "failed to designate the responsiveness of native e-mails," making it "unclear whether and to what extent the native emails respond to OnActuate's requests for production, if any."  Dkt. No. 62-1 at 8.

As noted above, defendant contends that the style of index plaintiff requests has

13

"no purpose" due to the "limited number of relevant documents that were identified" and because the documents can be identified because "each document produced corresponded to each of OnActuate's Requests as set forth in Aeon's Amended and Supplemental Objections [sic]/Responses."  Dkt. No. 63 at 6.

The Court determines that, regardless of the size of production, as plaintiff indicated it is unable to properly assess defendant's production, the Court orders defendant to produce to plaintiff an index that "designate[s] the responsiveness of native e-mails" and/or specifies "whether and to what extent the native emails respond to OnActuate's requests for production, if any."  Dkt. No. 62-1 at 8.  Although the "organizational" system defendant adopted in its index may correspond to the requests, it is clear that plaintiff is having difficulty reviewing these responses.  Accordingly, regardless of the number of responsive e-mails, it is reasonable and a low burden for defendant to produce an index that provides what plaintiff seeks.

### C.  E-mails

Plaintiff argues that the Aeon e-mails that CHP produced by subpoena are responsive,[6] and demonstrate that defendant has not withheld documents and opines that "there may be several hundred responsive emails between Aeon and CHP which

---

[6] It appears that the CHP e-mails relate to plaintiff's requests 74, 76, and 77, which seek "all communications between Aeon and CHP concerning OnActuate's alleged failure to comply with CHP security protocols and required clearances," "all communications concerning or evidencing Aeon's assignment of Linda Savona as project manager for the project," and "all communications concerning or evidencing Aon's assignment of Linda Savona as project manager for the project".  See Dkt. No. 62-7.  Defendant's letter brief states request numbers 74, 76, and 77; however, instead of quoting request number 76, it repeats request 77 twice.  See Dkt. No. 62-7.  Request 76 seeks "[a]ll documents evidencing travel and accommodation of Aeon, its employees and contractors, to perform work on-site at the Project."  Dkt. No. 62-7 at 13.  The Court recognizes this as typographical error and concludes it is safe to assume that plaintiff seeks request 76.

Aeon is withholding from production." Dkt. No. 62-2 at 3.  Plaintiff further appears to argue that the fact that defendant produced "very few" internal e-mails also suggests that relevant internal e-mails "between Aeon employees who worked on the project" have not been produced.  Id.  By contrast, defendant argues that (1) plaintiff never provided defendant with the CHP documents it says are responsive; (2) the e-mails plaintiff produced during Mr. Usmani's deposition were not responsive/relevant to the claims and defenses in this case.

Defendants aver that Ms. Usmani, the Chief Operating Officer of Aeon, provided in a sworn affidavit that Aeon's "email platform will keep as much data as there is space for, but once an account is deactivated, the emails associated with the account are lost. Aeon's cloud-based email platform has no back up or archive."  Dkt. No. 63-19 at 2 ¶ 11.  Further, in response to plaintiff's allegations that the CHP production demonstrated that defendant failed to overturn relevant, responsive documents, defendant argues that, despite its requests, it never received the CHP documents from plaintiff,[7] with the exception of a few, nonrelevant e-mails disclosed during Mr. Usmani's deposition. Defendant also argued that it has repeatedly searched and has not found any more relevant e-mails.[8]

Here, plaintiff would have been well-advised to seek leave to file a reply.  It is difficult for the Court to assess the relevance claims as it relates to the CHP subpoenaed documents as the Court does not have plaintiff's arguments with respect to

---

[7] Plaintiff submitted an October 21, 2022, letter from Mr. Hanna to Mr. Schuerermann that states that, "On Monday morning we will place a flashdrive in the mail containing the documents produced by CHP in the manner in which CHP produced them to us." Dkt. No. 62-9 at 2.  However, it has not been demonstrated that the full CHP production was provided to defendant.
[8] This is with the exception of the two documents that it discovered through using e-discovery software which it overturned to plaintiff, discussed herein.

the relevance of the CHP subpoenaed e-mails disclosed during Mr. Usmani's deposition or the remainder of the CHP subpoenaed e-mails that were not disclosed to defendant or the Court.  Plaintiff has failed to demonstrate that the documents it is seeking – those it received through the CHP subpoena and other e-mails – are relevant to the claims and defenses in its case.  See Zanowic v. Reno, 97 Civ. 5292 (JGK/HBP), 2000 WL 1376251, at *6 (S.D.N.Y. Sept. 25, 2000) ("Since the party seeking discovery bears the burden of initially showing relevance, [the moving party's] failure to explain the relevance of this information is fatal to [its] motion to compel.").  Importantly, plaintiff has not demonstrated that there are other responsive documents that exist that defendant is withholding.  Defendant asserts that (1) it has been unable to locate any further responsive documents, and (2) the only documents it has seen from the CHP production are the ones produced during Mr. Usmani's deposition, which are not relevant because the e-mails plaintiff produced were dated after OnActuate's termination or were e-mailsdefendant already produced.  See Dkt. No. 63 at 4.  As to requests 67, 68, 69, 70, 73, 81, 84, and 85, defendant avers that it "searched and produced relevant documents to the Eleven Requests in its responses to OnActuate's First Request for Production"; Ms. Usmani "conducted further searches in preparing Aeon's Responses to OnActuate's Second Request for production; and Ms. Usmani, after obtaining e-discovery software, "searched the e-mail accounts of Aeon employees who worked on the CHP and several other employees" through use of e-discovery software.  In response, it certified that through these searches, beyond the two additional emails found through the e-discovery software, defendant found no further

documents responsive to requests 67, 68, 69, 70, 73, 81, 84, and 85. Defendant again makes this assertion.

Plaintiff contends that defendant deleted the Aeon e-mails accounts of OnActuate employees after it knew of potential of legal action against it in connection with the CHP project, insinuating spoliation. Defendant has provided, with support from Ms. Usmani, that it is a routine business practice to delete e-mail accounts shortly after an employee is terminated and that their cloud e-mail server does not maintain a backup or archive. See Dkt. No. 63-19 at 2. Plaintiff argues that defendant has made no attempt to recover these e-mails. Although plaintiff has not provided what kind of recovery could be attempted if the e-mail server has no backup or archive, because defendant has not provided evidence from the cloud-based provider that no backup, archive, or recovery can be provided, defendant is directed to provide an affidavit from an appropriate representative of the cloud-based e-mail server that confirms that there exists no backup or archive and that there is no ability to recover the e-mails from the relevant deleted accounts. Defendant is to serve plaintiff with this affidavit within twenty-one days from the filing date of this Memorandum-Decision & Order.

Plaintiff has not provided evidence contesting defendant's arguments. As plaintiff has not demonstrated that defendant is "withholding hundreds of communications from production that are pertinent and relevant to this litigation," and defendant has affirmed that it does not have any further responsive communications or documents, plaintiff's request relating to the CHP production and related requests is denied. To the extent plaintiff contends that defendant's response with respect to interrogatory number 21 is

misleading, the Court concludes that defendant's original response, combined with Ms. Usmani's affidavit, suffices.  See Dkt. No. 62-1 at 9.

The sum and substance of plaintiff's argument is that it does not believe that defendant has produced all relevant and responsive documents relating to the eleven requests.  However, defendant has provided sworn affidavits from a corporate representative indicating that it has searched all of its documents and has provided all responsive requests.  Given that defendant has provided a sworn statement that it does not have access to any further relevant communications, beyond directing defendant to provide an affidavit from its cloud-based e-mail server, there is nothing left for the Court to do.  Absent evidence of defendant withholding of relevant documents it possesses, the Court cannot compel defendant to produce documents that it affirms do not exist or are not in its possession.  "The burden is on the party seeking to compel discovery to cast doubt on the responding party's assertion that it does not have the requested information."  Sidman v. Concord Arena Parking, LLC, No. 15-CV-7426-CBA-SJB, 2021 WL 1940255, at *2 (E.D.N.Y. May 11, 2021) (quoting Gary Friedrich Enters., LLC v. Marvel Enters., Inc., No. 08-CV-1533, 2011 WL 2623458, at *1 (S.D.N.Y. June 21, 2011) (collecting cases)).  "Accordingly, when counsel represent that they have conducted a reasonable search and have not uncovered all requested documents, it is up to the requesting party to show that the search was inadequate."  Gary Friedrich Enterprises, LLC , 2011 WL 2623458, at *1.  "When parties assert that they have produced all responsive documents . . . and the adversary believes the production is incomplete, the remedy is not to pound the table and ask the Court to order additional production.  A court cannot order a party to produce that which does not exist."  Sidman,

2021 WL 1940255, at *2 (citing Sanchez v. County of Sacramento, No. 19-CV-1545, 2020 WL 1984174, at *4 (E.D. Cal. Apr. 27, 2020)); OnActuate Consulting, Inc. v. Aeon Nexus Corp., 1:20-CV-508 (LEK/CFH), 2022 WL 866418, at *9-*10 (N.D.N.Y. Mar. 23, 2022) (citing McMillian v. Cnty. of Cortland, No. 9:04-CV-0827 (PAM/GHL), 2008 WL 4283379, at *1 (N.D.N.Y. Sept. 16, 2008) (A party "cannot be compelled to produce documents they do not have.")).  In sum, to the extent plaintiff wishes the Court to compel defendant to produce further documents beyond the affidavit from its cloud-based e-mail server or sanction defendant for withholding documents, the motion is denied.

## IV.  Conclusion

Wherefore, for the reasons set forth herein it is hereby

**ORDERED**, that plaintiff's motion to compel (Dkt. No. 62) is **GRANTED IN PART**:

(1) Within twenty-one (21) days from the filing date of this Memorandum-Decision & Order, defendant is to produce to plaintiff an affidavit from an appropriate representative of the cloud-based e-mail server it used at the relevant time period to substantiate its claim that there is no archive/backup of the deleted e-mail accounts/e-mails and no method of recovery;

(2) defendant's general objections are to be deemed disregarded;

(3) defendant is to produce to plaintiff, within seven (7) days from the filing date of this Memorandum-Decision & Order, an index that "designate[s] the responsiveness

of the native emails" and makes clear "whether and to what extent the native emails respond to OnActuate's requests for production, if any"[9]; and it is further

**ORDERED**, that plaintiff's motion to compel (Dkt. No. 62) is otherwise **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve this Memorandum-Decision & Order on the parties in accordance with this District's Local Rules.

**IT IS SO ORDERED**.

Dated: August 8, 2023
      Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[9] Dkt. No. 62-2 ¶9.