**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ONACTUATE CONSULTING, INC.,

                        Plaintiff/Counter-Defendant,

        v.                                1:20-CV-508
                                           (AMN/CFH)

AEON NEXUS CORPORATION,

                        Defendant/Counter-Plaintiff.

**APPEARANCES:**                    **OF COUNSEL:**

Condon Tobin Sladek Thornton Nerenberg    JUSTIN HANNA, ESQ.
8080 Park Lane Ste. 700
Dallas, Texas 75231
Attorneys for plaintiff/counter-defendant

Phillips Lytle LLP                 MARC H. GOLDBERG, ESQ.
Omni Plaza
30 South Pearl Street
Albany, New York 12207
Attorneys for plaintiff//counter-defendant

The French Firm PC              BRETT D. FRENCH, ESQ.
125 Wolf Road, Ste. 103
Albany, New York 12207
Attorneys for defendant/counter-plaintiff

School Administrators Association    ARTHUR P. SCHEUERMANN, ESQ.
New York State
8 Airport Blvd.
Latham, New York 12110
Attorneys for defendant/counter-plaintiff

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION & ORDER**[1]

---

[1] Familiarity with underlying claims and defenses in this case is assumed and will not be repeated here. For such background, reference is made to plaintiff's complaint, or the parties' instant briefing.

Presently before the Court is defendant Aeon Nexus Corporation's ("Aeon" or "defendant") motion to: (1) permit late expert disclosure, and (2) compel plaintiff to provide discovery responses to three outstanding requests.  See Dkt. No. 75.  Plaintiff OnActuate Consulting, Inc. ("OnActuate" or "plaintiff") opposed.  See Dkt. No. 78.  Plaintiff thereafter separately filed a motion to preclude/strike defendant's late expert disclosure.[2]  See Dkt. No. 76.  Defendant opposed plaintiff's motion to preclude/strike its late expert disclosure.  See Dkt. No. 77.[3]

## I. **Legal Standards**

### A. **Late Expert Disclosure**

Rule 26(a)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") provides, "[i]n addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."; see also Sheehy v. Wehlage, No. 02CV592A, 2006 WL 3290131, at *3 (W.D.N.Y. Nov. 13, 2006) ("Rule 26(a)(2) requires parties to disclose the identity of any experts they intend to call, including a complete statement of their opinions, the background information and data used by the expert to reach his or her opinions, a statement of the expert's qualifications, list of publications within the last ten years, the compensation paid for the expert's study and testimony, and a list of cases in the last four years in which the expert testified, Fed. R. Civ .P. 26(a)(2)(A), (B))."  A party is to disclose expert testimony "at the times and in the sequence that the court orders."  FED. R. CIV. P. 26(2)(D).

---

[2] Within its opposition, plaintiff indicates that it seeks to incorporate its motion to strike within its opposition to defendant's motion for leave to file late expert disclosure.  See Dkt. No. 78 at 5.
[3]  The Court's citations to the parties' briefing are to the pagination generated by the Court's electronic filing system, located at the header of each page.

"Where a party has failed to comply with a court-imposed deadline for expert disclosures and then seeks to avoid preclusion, courts consider (1) the reason for the non-compliance, (2) the importance of the witness to be precluded, (3) prejudice to the opposing party, and (4) any potential for continuance." Scharrer v. United States, 13-CV-1156S(F), 2016 WL 3457933, at *2 (W.D.N.Y. June 30, 2015) (citing Softel, Inc. v. Dragon Med. & Scientific Communications, Inc., 118 F.3d 955, 961 (2d Cir. 1997)); See, e.g., Damato v. City of New York, No. 06 CIV. 3030 (DC), 2008 WL 5560883, at *2 (S.D.N.Y. June 13, 2008) ("Plaintiffs would be prejudiced if the expert testimony were allowed, for, understandably, they would want to depose the expert if he is going to testify at trial, and they would be entitled to depose him about his conclusions and opinions. Moreover, depending on what the expert were to say at his deposition, plaintiffs might have to adjust with respect to their own expert.").

"Failure to timely serve such reports requires the reports be stricken and the related expert's trial testimony precluded unless the failure was substantially justified or is harmless." Scharrer, 2016 WL 3547933, at *1 (citing FED. R. CIV. P. 37(c)(1)). However, it is well settled that the district court has broad discretion in determining whether to impose sanctions for late expert disclosure, as well as the choice of sanction.  See Geary v. Fancy, No. 12-CV-796W(F), 2016 WL 1252768, at *4 (W.D.N.Y. Mar. 31, 2016) (citing Design Strategy, Inc. v. Davis, 469 F.3d 284, 297-98 (2d Cir. 2006) and Lormé v. Delta Air Lines, Inc., 251 F. App'x 691, 692 (2d Cir. 2007) (summary order); (Salem v. United States Lines, Co., 370 U.S. 31, 35 (1962) (noting that the court "has broad discretion in matter of admission or exclusion of expert evidence . . . .")).

As the Southern District of New York recently reiterated,

> [i]mposing Rule 37(c) sanctions does not require a showing of bad faith by the offending party. Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006). However, "preclusion of evidence pursuant to 37(c)(1) is a drastic remedy and should be exercised with discretion and caution." Ebewo v. Martinez, 309 F.Supp.2d 600, 607 (S.D.N.Y. 2004). Additionally, "preclusion of an expert report can be a harsh sanction." Sandata Techs., Inc., 2007 WL 4157163, at *7. Before courts use the "extreme sanction of preclusion," they should "inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." Outley v. City of New York, 837 F.2d 587, 591 (2d Cir. 1988).

Peerless Network, Inc. v. AT&T Corp., No. 15-CV-870 (VM)(VF), 2022 WL 3700141, at *4 (S.D.N.Y. Aug. 26, 2022).

## B.  Compelling Discovery

A party seeking to compel discovery after the expiration of discovery deadline needs to demonstrate good cause.  See Gucci Am., Inc. v. Guess?, Inc., 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011); FED. R. CIV. P. 37(a).  Determining whether good cause exists involves a six-part balancing test:

> (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court; and (6) the likelihood that the discovery will lead to relevant evidence.

Oliver v. Am. Express Co., No. 19-CV-566NGGSJB, 2022 WL 18998430, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting Pierre v. Hilton Rose Hall Resort & Spa, No. 14-CV-3790 (VMS), 2016 WL 2745821, at *3 (E.D.N.Y. May 11, 2016)).  "[G]ood cause depends on the diligence of the moving party." Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003).

"Motions to compel, pursuant to Rule 37, are left to the sound discretion of the court." Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc., 328 F.R.D. 450, 452 (S.D.N.Y. 2018) (quoting Christine Asia Co. v. Alibaba Grp. Holding Ltd., No. 15-md-02631 (CM) (SDA), 327 F.R.D. 52, 54, 2018 WL 4941773, at *2 (S.D.N.Y. 2018)).

## III. **Arguments**

### A. **Expert Disclosure**

Defendant acknowledges that,

> at a Court conference held on December 7, 2022, regarding a different motion to compel brought by OnActuate, the Court refused to extend the discovery deadline passed [sic] the scheduled deadline of December 15, 2022. However, based on a full and complete record of the facts and circumstances here, Aeon requests that the Court exercise its inherent discretion and reopen discovery to effectuate its decision on the expert record motion and Aeon's motion to compel.

Dkt. No. 75-25 at 20.

Defendant argues that it has good cause for serving late expert disclosure. It contends that it was not aware of its need for an expert because its litigation strategy was to depose plaintiff's employees about "the environments, how they were configured incorrectly and why they did not work." See Dkt. No. 75-25 at 12, 20. Defendant provides, in April 2022, plaintiff, in its Second Supplemental Objections and Responses to Aeon's First Request for Interrogatories, identified Naeem Shafi, Harmeet Walia, Tanuj Gobel, Nikhil Rai Gupta, Sanjay Chouhan, Deepak Verma, Manish Agrawal, and Vinay Partap, as OnActuate employees. See Dkt. No. 75-25 at 7. In August 2020, in its Rule 26 disclosures, plaintiff identified Dennis Lacey as an OnActuate employee, specifically its Vice President of Business Development. See id. at 8; Dkt. No. 75-3. In July 2022, plaintiff served its Third Supplemental Objections and Responses to Aeon's

First Request for Interrogatories wherein it contended (1) "that Mr. Goel, Mr. [ ] Verma, Mr. Agrawal, Mr. Partap, and Mr. Chouhan, were not employees of OnActuate, but rather, were employees of OnActuate's affiliate, OnActuate Consulting India Pvt, Ltd. . . . located in Gurgaon Haryana, India"; and (2) "Mr. Lacey was a consultant to OnActuate and not an employee." Dkt. No. 75-25 at 8. Defendant provides that these individuals are located in India and Canada – outside of the reach of a federal subpoena. See Dkt. No. 75-25 at 8. Further, defendant contends that OnActuate's technical consultant on the CHP Project, Mr. Goel, "admitted [during his deposition that] he did virtually no work on the project." Id. at 20.

On October 5, 2022, defendant advised the Court that, excepting Mr. Goel and Mr. Lacey,[4] the OnActuate India individuals would not submit to depositions. See Dkt. No. 75-25 at 8. Defendant argues that, once it became aware that it would be unable to depose these individuals, it was "forced . . . to change its litigation strategy and look immediately to secure an expert." Id. On November 14, 2022, defendant retained Eric Kimberling of Third State Consultant Group and notified plaintiff that Mr. Kimberling would be its expert witness. See id. Defendant served its expert witness report on December 9, 2022. See id. at 75-25 at 9. The discovery deadline in this case was December 15, 2022, and the Civil Case Management Plan required expert witnesses to be identified 45 days before the expiration of discovery, or by October 31, 2022. See Dkt. Nos. 3, 51.

Defendant notes that it identified its expert and served expert disclosure prior to the expiration of discovery. It further avers that it is "notable that though December 15,

---

[4] Mr. Goel and Mr. Lacey agreed to remote depositions. See Dkt. No. 54.

2022[,] was the scheduled end date of Discovery . . . discovery was still sought by and from both parties," noting that plaintiff had an upcoming motion to compel.  Dkt. No. 75-25 at 12.   Defendant argues that "[t]he reality of the near concluded, but apparently open discovery process is relevant as it highlights a lack of prejudice to OnActuate."  Id. Defendant further argues that it its "awareness that it may need to produce an expert witness was consistently delayed as a result of OnActuate's evasive discovery practices . . . ," further supporting its argument that good cause exists.  Id. at 13.

Alternatively, defendant contends that in the event the Court finds an absence of good cause for the delay, "at the very least a proper and understandable explanation exists as to why Aeon was unable to meet the Rule 16 timelines for full and complete expert disclosure prior to the conclusion of discovery."  Dkt. No. 75-25 at 15.  It contends that preclusion of its expert is a drastic remedy and urges consideration of a lesser sanction.  See Dkt. No. 75-25 at 14.

Plaintiff argues that defendant has not shown good cause warranting late service of its expert disclosure.  See Dkt. No. 77-4.[5]  Plaintiff contends that the request should be denied and expert disclosure stricken because defendant did not (1) proceed with due diligence and the delay is due to "its own inaction": for two years it "did nothing to seek the non-party depositions it argues were 'crucial' to its litigation strategy[,]" "[w]hen the non-parties declined to voluntarily appear at a deposition, Aeon did nothing in the four weeks remaining to designate an expert or otherwise request an extension of the deadline," and (2) seek a conference to file a motion for leave to file late expert disclosure.  Dkt. No. 78 at 3-4, 16.

---

[5]  In its separate motion, plaintiff seeks to strike defendant's untimely disclosed expert for the same reasons.  Dkt. No. 76-1.

Plaintiff contends that defendant knew the identity of the individuals "from the beginning of the case," but "from February 2021 through July 2022," defendant "did not serve additional written discovery nor request a deposition of any of the persons it believed worked on the Project."  Dkt. No. 78 at 7.  Further, plaintiff opines that defendant's proffered strategy to rely on the testimony of the "employees" was insufficient because defendant "was aware" that expert testimony needed "to establish that OnActuate's work failed to comply with industry standards" – "an essential element of its own counterclaim and affirmative defense . . . filed in September 2020."  Id.

Plaintiff argues that defendant "does not offer any substantive discussion of importance, prejudice to OnActuate, or availability of a continuance."  Dkt. No. 78 at 9. It further argues that it would be "immense[ly]" prejudiced if the Court were to permit defendant to serve late expert disclosure.  Id. at 4.  Plaintiff accuses defendant of pursuing a "not-so-subtle strategy of dragging out this straightforward case of Aeon's failure to pay two invoices, in hopes that the delay and costs incurred by OnActuate will deter it from moving forward."  Id.

Plaintiff further takes issue with defendant's effort – or alleged lack thereof – to "press the issue" of obtaining depositions from Mr. Partap, Mr. Agrawal, and Mr. Verma, "either through filing a motion to compel or otherwise," after they declined to be deposed voluntarily.[6]  Dkt. No. 78 at 8.  Lastly, plaintiff contends that the "critical defect" in defendant's argument is, why defendant could not timely disclose its expert or "seek appropriate relief within the nearly four-week-period between allegedly learning it

---

[6]  In suggesting that defendant should have "otherwise attempt[ed] to subpoena the witnesses," plaintiff contends that "India is a party to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters."  Dkt. No. 76-1 at 13 n.3.

needed an expert and the expert deadline." Dkt. No. 78 at 8. Plaintiff argues that "at the latest," defendant learned on October 5, 2022, that it needed an expert witness, leaving it with "26 days before its expert disclosure deadline," during which time it could have "[r]aised the issue with OnActuate or filed a request to modify the discovery schedule as soon as it made its purported discovery." Dkt. No. 78 at 9.

Plaintiff contends that defendant's argument that it was unaware of its need for an expert until it learned that it would be unable to depose Mr. Verma, Mr. Agrawal, and Mr. Partap is "facially absurd" because, "even if it obtained the three depositions, it could not supplant the requisite expert testimony with Verma's, Agrawal's, or Partap's anticipated lay testimony." Dkt. No. 76-1 at 12. Plaintiff contends that Mr. Verma, Mr. Agrawal, and Mr. Partap, as fact witnesses, "could not establish the existence of an industry standard that was allegedly breached[.]". Dkt. No. 76-1 at 12.

Plaintiff further contends that, although defendant's "theory that OnActuate violated industry standards requires expert testimony . . . Kimberling's report is unimportant because it consists solely of immaterial, irrelevant, and unhelpful opinions, and inadmissible fact summaries of hearsay evidence." Dkt. No. 76-1 at 18. It avers that Mr. Kimberling's report lacks "any identification of industry standards or practices, much less reference to any facts or data that are 'reasonably relied' on by 'experts in the field[,]'" in violation of Federal Rule of Evidence ("Fed. R. Evid.") 703. Id. at 19-20. Plaintiff dismisses Mr. Kimberling's report as "speculative," "conclusory," "factual summation derived from hearsay," and "lack[ing] foundation." Id. at 19. Plaintiff further opines that Mr. Kimberling fails to "offer any facts or data underlying his opinions." Id. at 20.

In response to plaintiff's motion to strike, defendant rejects plaintiff's argument that it was dilatory in seeking to depose Mr. Verma, Mr. Agrawal, and Mr. Partap.  See Dkt. No. 77-4 at 5.  Contrary to plaintiff's contention that defendant was "aware" of these witnesses from the commencement of the case, defendant avers that plaintiff's initial Rule 26 disclosures "did not list any employee or contractor who performed the implementation work on the California Highway Patrol Project, except for Naeem Shafi[,]" even though this information would have been known to plaintiff at that time. Id.  Then, once plaintiff provided its Supplemental Objections and Responses to defendant's First Set of Interrogatories, it identified Mr. Shafi, Harmeet Walia, and Tanuj Goel as employees and Ian Shufflebotham as a contractor – the only "OnActuate resources" plaintiff identified as working on the CHP Project.  Dkt. No. 77-4 at 6. "OnActuate refused to identify the three individuals Aeon had eventually sought to depose, Deepak Verma, Vinay Partap, or Manish Agrawal, nor Sanjay Chouhan or Nikhil Gupta other OnActuate employees and/or contractors who worked on the CHP Project." Dkt. No. 77-4 at 6.  Defendant provides that it was not until "written discovery conducted between November 2020 and July 2021" that plaintiff produced "a limited number of emails that revealed OnActuate had other unidentified employees/contractors working on the CHP Project, including Mr. Verma, Mr. Partap, and Mr. Agrawal."  Id. Defendant provides that after these "resources" were identified, defendant "demanded OnActuate to revise its answer to Aeon's Interrogatory No. 14 and produce other relevant documents."  Id.  Defendant argues that although parties extended discovery "in an attempt to resolve these matters . . . OnActuate refused to budge" and "Aeon did not want to proceed to depositions until written discovery was completed."  Id. at 7.

Defendant further elaborates that it was not until "almost a year later," on April 22, 2022, and after this Court granted in part its motion to compel, that plaintiff identified Vinay Partap, Deepak Verma, Manish Agrawal, Sanja Chouhan, and Nikhil Gupta as OnActuate employees."  Dkt. No. 77-4 at 7.  "Conspicuously absent from its Response to Interrogatory No. 14 was Dennis Lacey, the OnActuate identified employee who negotiated with Aeon with Aeon relating to the Teaming Agreement, work on the CHP Project and Aeon's refusal to pay, as stated in its Initial Rule [sic] Disclosures."  Id.

## B.  **Motion to Compel Discovery**

Defendant seeks this Court to compel plaintiff to comply with its second and third requests for production and second set of interrogatories.  Specifically, it

> Seeks the Court to compel OnActuate to (1) produce the time records of OnActuate employees and OnActuate Indian subcontractors on the CHP Project; (2) provide an index or discovery response indicating which Aeon Requests for Production the documents OnActuate produced on the night of December 8, 2022[,] were responsive, . . . , and (3) produce documents related to the issuance of OnActuate shares of stock and answer interrogatories regarding the identity of shareholders of OnActuate and OnActuate India and their responsive ownership interests in the two companies.[7]

Dkt. No. 75-25 at 21.  Defendant contends that the motion should be granted because plaintiff "falsely represented in bad faith that the documents sought by Aeon would be produced."  Id. at 19.  Defendant asserts that the request is not burdensome as the "requested information should be readily available to OnActuate."  Id. at 21.  It further

---

[7]   Request for production 108 seeks "copies of all shares of stock or equity issued by OnActuate Consulting, Inc. to any persons or entity."  Dkt. No. 78 at 16.  Interrogatory 16 seeks the identity of "all the shareholders of OnActuate Consulting, Inc., and the percentage of equity that each shareholder owns in the company."  Id.  Interrogatory 17 seeks the identity of "all owners of OnActuate Consulting India Pvt. Ltd. and each owner's percentage of ownership [sic] the company."  Id.

contends that plaintiff would not be prejudiced "if required to produce documents that should have been produced and answer the two interrogatories that should have been answered before the end of discovery."  Id. at 21-22.

Plaintiff provides that, along with its opposition to defendant's motion, it "concurrently serve[d] a document index and the timesheets, along with a supplemental response and respectfully requests that the Court deny this portion of the motion as moot."  Dkt. No. 78 at 5.  Absent indication otherwise from defendant, the Court agrees that, insofar as defendant's motion sought a document index and timesheets, those requests are denied as moot.  Thus, the Court will assess only the final request -- "documents related to the issuance of OnActuate shares of stock and answer interrogatories regarding the identity of shareholders of OnActuate and OnActuate India and their responsive ownership interests in the two companies."  Dkt. No. 75-25 at 19.

Defendant contends that Mr. Shafti testified that he was a partner and shareholder in OnActuate but "was evasive regarding the percentage of his ownership interest in OnActuate . . . and expressed a lack of knowledge about the number of other OnActuate shareholders."  Dkt. No. 75-25 at 25.  Defendant explains a little further in an exhibit appended to the motion.  In a November 25, 2022, letter to plaintiff, counsel for defendant argued that the interrogatories were relevant "because Sharan Oberoi gave inconsistent sworn testimony in answering Aeon's Interrogatory No. 14 relating to OnActuate's employees/consultants who worked on the California Highway Patrol . . . project."  Dkt. No. 75-13 at 1.  Defendant elaborated that "[t]he corporate structure of the parent company, OnActuate and its subsidiaries became critical when Naeem Shafti, an OnActuate officer and shareholder provided evasive testimony about OnAcutate's

corporate structure and its subsidiaries OnActuate Consulting India Pvt. Ltd., OnActuate Consulting U.S., Inc., and OnActuate US West Consulting, Inc." Id.  Defendant contended further that "[s]uch information may form the basis of a possible negative interference or other sanctions due to OnActuate's refusal to produce the individuals for deposition under the recent claim they are not OnActuate employees." Id. In addition, defendant explains that Mr. Goel testified that "OnActuate had such a degree of ownership and control over OnActuate India that the two entities operated as one."  Dkt. No. 75-25 at 23, 25.  Mr. Goel testified that Mr. Shafti, Sharan Oberoi, and Ashish Sharan were partners in OnActuate, noting that Mr. Oberoi was "located in India and runs OnActuate India."  Id. at 25.  He further testified that Mr. Shafti and Mr. Oberoi were also partners in OnActuate India.  See id.  During the CHP Project, "only Mr. Shafti was involved and he played the role of OnActuate's project manager on the project."  Id.

In sum, defendant argues that the requested "documents and information would further support Mr. Goel's testimony that OnActuate controls OnActuate India to the degree that OnActuate can exercise custody and control over OnActuate India, such as OnActuate India's common time record keeping system[.]"  Id.   The other reason defendant contends that it requires this information is because, "Aeon's requested information would further strengthen the parent corporation/direct subsidiary relationship that Mr. Goel testified, thus entitling Aeon to subpoena documents from OnActuate India through its parent company OnActuate before trial."  Dkt. No. 75-25 at 28.

Plaintiff argues that the "identity and equity percentage of OnActuate and its India-based subsidiary is plainly irrelevant to this case" and asserts that defendant "has not, nor cannot, demonstrate the relevancy of such intrusive discovery."  Dkt. No. 78 at

5.  Plaintiff points out that there is "no claim against OnActuate's shareholders, or nonparty subsidiaries and their respective owners, nor has Aeon asserted any veil piercing theory of liability."  Id. at 15.  Plaintiff refutes as "completely hypothetical" defendant's contention that the requested documents and information would support its ability to subpoena OnActuate India, noting that "OnActuate's control over OnActuate India has never been formally raised, much less litigated."  Id. at 16.  Further, plaintiff avers that it "has never objected to discovery concerning OnActuate India."  Id.  To the extent plaintiff "did claim that it could not compel OnActuate India employees to attend a deposition," defendant "never raised the issue, filed a motion to compel, or even attempted to serve a subpoena on OnActuate for the depositions, such that the issue might become ripe."  Id.  Plaintiff asserts that defendant's "explanation for this irrelevant and intrusive discovery only demonstrates Aeon's not-so-subtle goal of securing yet another extension of the discovery period so that it may continue to prolong the resolution of this matter and inflict pain on OnActuate for pursuing its legal remedies." Id. at 16-17.

## IV. **Discussion**

### A. **Expert Disclosure**

The question of good cause is not as clear as parties each suggest.  There are questions on both sides that have been left unanswered.  First, plaintiff does not address why it waited until October 2022 to disclose to defendant that the various individuals were not OnActuate employees, but employees of OnActuate India and consultants located out of the country, beyond this court's subpoena power.  Rather than address why it did not provide this information sooner, plaintiff argues that

defendant "was well aware of these three witnesses [Verma, Mr. Agrawal, Mr. Patap] from this case's commencement years ago," and if it "acted with any diligence in requesting the depositions, it would have learned years ago that these individuals were not employed by OnActuate and would require a subpoena." Dkt. No. 76-1 at 13.  It does not defend plaintiff's claim that it informed defendant in August 2020 that these individuals were OnActuate employees but failed to correct that misstatement until July 2022.  Even if defendant could have – or should have – sought to depose these individuals sooner, absent some earlier indication that these individuals were not employees or that the other OnActuate witnesses would not have sufficient knowledge, defendant reasonably would not know of the urgency.

Defendant learned on July 25, 2022, that Mr. Goel, Mr. Verma, Mr. Agrawal, Mr. Patap, and Mr. Chouhan were not OnActuate employees, and that Mr. Lacey was a consultant.  See Dkt. No. 75-25 at 8.  Although not made entirely clear, it appears that it learned on October 5, 2022, that the individuals would not submit voluntarily to deposition.  Discovery ended on December 15, 2022.  Thus, expert disclosure was due 45 days prior – by October 31, 2022.  Defendant indicates that upon being informed that the individuals in questions were not employees, it attempted to seek voluntary depositions, and once it learned that most would not submit to a voluntary deposition, it sought out an expert witness.  Defendant avers that it could not disclose its expert by October 31, 2022, because it had not secured an expert by then.  See Dkt. No. 77-4 at 9.  Defendant provides that it "took about five weeks to identify an enterprise resource planning expert, perform a conflicts check and then retain" its expert.  Id.

The Court first addresses the reason or the delay.  See Softel, 118 F.3d at 961.

Plaintiff is correct that reasonable diligence would dictate that defendant take action sooner.  Upon learning that Mr. Verma, Mr. Agrawal, and Mr. Partap would not be deposed voluntarily, defendant had "26 days to retain an expert and timely serve disclosures or, if that deadline could not be met, seek an extension of the deadline from the Court.  Aeon did nothing."  Dkt. No. 76-1 at 13.  However, the Court balances this delay against plaintiff's own lack of diligence in misinforming defendant of these individuals' employment statuses for two years.  Although plaintiff rightly faults defendant for its failure to act in the 26 days between it learning of the unavailability of witnesses and the expert disclosure deadline, plaintiff also "cannot be genuinely surprised" by defendant's need for an expert witness insofar as plaintiff proffered no witnesses who could speak to the "events during the time period when the environments failed" or "how OnActuate's inferior work breached its obligations under the Teaming Agreement."  Dkt. No. 77-4 at 15.  See, e.g., Rodriguez v. Ford Motor Cp., 2023 WL 1299251, at *3 (W.D. Va. Jan. 31, 2023).  The Court agrees that it was not an entirely unreasonable strategy for defendant to have planned to rely on testimony from Mr. Verma, Mr. Partap, and Mr. Agrawal with respect to the "events during the time period when the environments failed" or even "how OnActuate's inferior work breached its obligations under the Teaming Agreement."  Dkt. No. 77-4 at 15.

However, the Court is perplexed and troubled by defendant's failure to address plaintiff's contention that an expert opinion would have been required even if Mr. Verma, Mr. Partap, and Mr. Agrawal were available to be deposed because, as laypeople, they could not testify as to industry standards.  Defendant admits that it seeks to have Mr. Kimberling testify about "best practices of Microsoft and industry standards in deploying

warehouse management systems using D365 that led to the environments not working" and that plaintiff's "failure to use the golden configuration and improperly using the test environment violated industry standards based on Microsoft's 365 F & O software."  Dkt. No. 77-4 at 15.  Further, failure to meet industry standards is raised in defendant's counterclaims in its answer, filed in July 2020.  Dkt. No. 11 at 6.

Although the Court agrees with defendant that plaintiff's delay in informing defendant that Mr. Verma, Mr. Partap, and Mr. Agrawal were not employees somewhat justifies its belated search for an expert with respect to some categories of information, defendant has failed address why it failed to obtain an expert sooner to address questions of industry standards and best practices.  It would appear that defendant would need expert testimony on industry standards and best practices even if it had knowledgeable OnActuate or OnActuate India employees to testify about the "events during the time period when the environments failed" or even "how OnActuate's inferior work breached its obligations under the Teaming Agreement."  Dkt. No. 77-4 at 15. In sum, although the "reason for the delay" factor, the Court has considered plaintiff's delay in considering defendant's belated expert disclosure; however, this factor ultimately leans more in favor of preclusion because although defendant has a somewhat reasonable excuse for part of its delay, it offers no excuse for why it would not have known to timely secure an expert to speak on industry standards and best practices.

The Court next addresses the second factor, importance of the evidence.  See Softel, 118 F.3d at 961.  Plaintiff concedes that expert testimony, generally, is important for defendant's defense and counterclaims, but contends that the expert report

demonstrates that the proposed expert's planned testimony is not "important" as defined by <u>Softel</u>.  <u>See</u> Dkt. No. 76-1 at 18.  However, there is an apparent absence of witnesses from OnActuate who are available to testify and knowledgeable about "Enterprise Resource Planning," "a cloud-based enterprise warehouse management system using Microsoft D365 F & O Software[,]" is a highly technical area outside a layperson's general knowledge[.]"  Dkt. No. 77-4 at 11.  Defendant contends that absent "deposition testimony of the three OnActuate contractors, Aeon could not confirm that the golden configuration was not used, which is an industry standard and Microsoft best practice" and "could not confirm that the bugs in the test environment were attributable to not following industry standards and Microsoft best practices in using the Dev Ops environment to do configuration work before transferring the data to the Test environment for testing."  <u>Id.</u> at 13.  Defendant avers that the expert testimony is needed "to defeat OnActuate's Prima Facie Showing of Breach of Contract and Aeon's Counterclaims for Damages."  <u>Id.</u> at 11.  Defendant argues that Mr. Kimberling's testimony is needed to "assist the trier of fact to understand how OnActuate's inferior work breached its obligations under the Teaming Agreement which testimony is supportive of Aeon's affirmative defenses and counterclaim."  Dkt. No. 77-4 at 15.  Defendant contends that it planned to rely on Mr. Verma, Mr. Partap, and Mr. Agrawal's testimony – the only persons who "possessed knowledge of the events during the time period when the environments failed."  Dkt. No. 77-4 at 14.

The Court concludes that defendant has demonstrated that Mr. Kimberling's testimony is "important" as defined by the standard.  As defendant is without any knowledgeable witness to testify as to the "events during the time period when the

environments failed," "how OnActuate's inferior work breached its obligations under the

Teaming Agreement," "Enterprise Resource Standards," and industry standards or best

practices, its ability to rely on expert witness testimony will be critical.  Dkt. No. 77-4 at

15.  This is so even as plaintiff challenges the content of the expert's report.  The Court

agrees that plaintiff's arguments regarding "the bases of Mr. Kimberling's expert opinion

. . . go to the weight of his testimony, and not to whether the Court should allow his

expert report."  Dkt. No. 77-4 at 15.   It is not clear that plaintiff seeks to exclude

testimony pursuant to Fed. R. Evid. 702.[8]  Indeed, briefing indicates that it seeks to

strike based on the belated expert disclosure. Further, the arguments as to Rule 403's

balancing requirement are not sufficiently briefed.  <u>See generally</u> <u>Smith v. Frike</u>, 635 F.

Supp.23d 152 (N.D.N.Y. 2022) (referencing Rule 403's balancing of probative value

with unfair prejudice or misleading a jury).  The Court reserves to plaintiff its ability to

seek to preclusion of defendant's expert testimony in a dispositive motion or through a

motion in limine before any trial.

The third factor is prejudice to the opposing party.  Prejudice to plaintiff is not

insignificant.  This case was commenced over three years ago.  Allowing for the belated

expert disclosure will delay the case and result in additional expense.  Plaintiff will likely

wish to depose defendant's expert and may seek to obtain and proffer a rebuttal expert.

Plaintiff also indicates that permitting the belated expert disclosure would lead to

additional motion practice and nonparty discovery.  Dkt. No. 76-1 at 17.  These are

considerations the Court does not take lightly.  However, the prejudice to plaintiff, in this

case, does not outweigh the other factors.  If the Court were to allow late expert

---

[8]  Indeed, this standard is cited just once in plaintiff's memorandum of law, in a citation where plaintiff quoted a case that relied on Fed. R. Evid. 702.  <u>See</u> Dkt. No. 76-1 at 12.

disclosure, discovery would be opened for this very limited purpose, and the Court would require depositions of defendant's expert to be done on an expedited schedule. Plaintiff has known since at least November 2022 of defendant's intention to seek expert testimony.  Further, although defendant's notice of expert disclosure was late, it was served close in time to the expiration of the deadline and prior to the expiration of discovery.  Although being shortly past the deadline does not alter or excuse that the deadline was missed, the degree of the delay is relevant to the question of prejudice. Although late expert disclosure has delayed this case insofar as it has required a stay of the dispositive motion deadline and the time it has taken for the Court to address the motion to permit late expert disclosure, the Court takes notice that the delay is not solely due to the request to serve late expert disclosure, but also other motion practice – including motions to compel that both parties have filed.  In considering the prejudice that will come from delay, the Court considers that no trial date has been set in this case, the dispositive motion that had been filed was denied with leave to renew, and dispositive motion deadline was stayed pending a determination on this motion.  See Dkt. No. 81.  Thus, even if plaintiff must address the expert's opinions in a renewed/supplemented dispositive motion, it will be afforded time to do so, as well as sufficient time before any trial to file any expert-related motions in limine, if applicable. See, e.g., Rodriguez, 2023 WL 1299251, at *3.

It is also significant that plaintiff is not without fault, as discussed in detail above, and is responsible for at least some of the delay in this case.  Although plaintiff will face prejudice by means of further delay and expense, as long as depositions of the expert – and potentially of a rebuttal expert – proceeded in a timely fashion, the Court is

confident that it will proceed more expeditiously.  Thus, although prejudice to plaintiff is significant, the Court does not conclude it to be overwhelming.

Addressing the final factor, a continuance is possible here.  "The fourth factor 'requires the Court to consider the appropriateness of granting a continuance, rather than defaulting to the harsh remedy of dismissal.'" Peerless Network, Inc. v. AT&T Corp., No. 15-CV-870 (VM)(VF), 2022 WL 3700141, at *6 (S.D.N.Y. Aug. 26, 2022) (quoting Gidora v. Howmedica Osteonics Corp., No. 16-CV-5774 (KMK), 2019 WL 1129127 at *4 (S.D.N.Y. Mar. 12, 2019)). The dispositive motion deadline was stayed pending a determination on this motion and no trial date has been set.  If discovery were reopened with respect to this issue, it would be limited to plaintiff filing the expert report, permitting plaintiff the opportunity to depose defendant's expert, and allowing plaintiff the option of presenting a rebuttal expert.  However, the Court is hesitant to permit even further delay in a case that was commenced over three years ago. Ultimately, though, the Court acknowledges that a continuance is possible and may be appropriate when balanced against the other factors of this case, as discussed in greater detail below.

After careful consideration of the requisite Softel factors, the Court concludes that the "[d]rastic remedy of preclusion is not warranted."  Barnett v. Connecticut Light & Power Co., No. 3:11-CV-1037 VLB, 2013 WL 1196669, at *2 (D. Conn. Mar. 25, 2013); Sealed Plaintiff No. 1 v. Sealed Defendant No. 1, 221 F.R.D. 367, 369 (N.D.N.Y. 2004) ("Even in the face of missed deadlines, "excluding expert testimony can 'frustrate the Federal Rules' overarching objective of doing substantial justice to litigants.'") (quoting Cartier, Inc. v. Four Star Jewelry Creations, Inc., No. 01 Civ. 11295, 2003 WL 22471909

(D.Conn. Oct. 31, 2003)).  Thus, the Court declines to preclude plaintiff's expert witness.

In so finding, the Court acknowledges that defendant lacked due diligence at two

distinct "phases": (1) when failing to seek an extension from the Court during the 26

days between learning of the unavailability of the OnActuate consultants, and (2) when

failing to obtain an expert witness at an earlier date when it knew it would need to

address its counterclaim on industry standards/best practices.  As for defendant's first

instance of lack of due diligence, the Court measures this against plaintiff's failure – and

absence of reasonable explanation – to timely identify these witnesses to defendant and

then to identify them as non-employees.  Although plaintiff faults defendant for failing to

seek their depositions sooner – arguing that it would have then learned that these

individuals were not OnActuate employees – it entirely fails to address its own

shortcomings.  However, despite plaintiff's insistence otherwise, as it relates to the 26-

day delay, the Court does not see evidence of dilatory motive or malintent on

defendant's part.  The Court does not find it wise that defendant did not reach out to the

Court to seek an extension of the expert disclosure deadline, but defendant provides

that it was actively searching for, reviewing, and retaining an expert during this time

period. Thus, precluding plaintiff's expert from testifying due to the untimely disclosure

for this first "phase" of lack of due diligence is not warranted.  As to the second, and

more serious "phase" of lack of diligence, despite defendant failing to put forth any

reason as to why it would not have earlier retained an expert when it knew it had a

counterclaim that required it to demonstrate industry standards and best practices, the

Court does not wish to impose the extreme sanction of preclusion given the importance

of the expert witness testimony to this case.  Accordingly, on balance, despite

defendant's shortcomings, in absence of evidence of bad faith, the Court declines to preclude defendant's expert in response to the second "phase" of lack of due diligence.

"'The Court also has authority to shift discovery costs to [the non-moving party] 'so as to avoid burdening [the moving party] with costs [it] would not have incurred, but for [the non-moving party's] non-compliance with the discovery rules.'" Peerless Network, Inc., 2022 WL 3700141, at *6 (quoting Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 162 (S.D.N.Y. 2012)).  As the Court finds that defendant did not proceed with all possible diligence, it does conclude that sanctions are warranted.  See Wynn v. Nat'l R.R. Passenger Corp., No. CIV 106CV1145 FJSRFT, 2008 WL 346373, at *2 (N.D.N.Y. Feb. 6, 2008) ("Sanctions are specific deterrents and are imposed for the purpose of obtaining compliance with the particular order issued, and intended as a general deterrent effect on the case at hand and the future, provided the party against whom sanctions are imposed was in some sense at fault.") (citing Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 71 (2d Cir.1988)).  Accordingly, defendant is ordered to pay: (1) plaintiff's reasonable attorney's fees and costs expended in preparing opposition to defendant's motion to compel, and (2) the stenography and transcription fees associated with any depositions of defendant's expert witness and of any rebuttal expert witness plaintiff may proffer.[9]  See Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990) ("Monetary sanctions pursuant to Rule 37 for noncompliance with discovery orders usually are committed to the discretion of the magistrate, reviewable by the district court under the

---

[9]  The Court declines to require defendant to pay fees and costs for plaintiff's separate motion to strike the expert report as it is largely duplicative of plaintiff's opposition to defendant's motion to compel/serve late expert disclosure.  See Dkt. No. 76.

'clearly erroneous or contrary to law standard.'") (citation omitted); <u>Ritchie Risk</u>, 280

F.R.D. at 162-63 (imposing a sanction requiring the nonmoving party to pay for

depositions of up to four hours).

Plaintiff may depose defendant's expert no later than thirty days[10] from the filing

date of this Memorandum-Decision & Order, and may file rebuttal expert disclosures

under the Federal Rules of Civil Procedure using the filing date of this Memorandum-

Decision & Order as the effective date of defendant's expert disclosure.  <u>See, e.g.,</u>

<u>Rodriguez</u>, 2023 WL 1299251, at *4.


B.  **Discovery**

As the Court does not have a reply from defendant,[11] it is unaware of its position

with respect to the timesheets, updated response, and index that plaintiff submitted in

response to its motion.  Absent a response otherwise, the Court believes plaintiff's

production of this material suffices; thus, the Court denies that portion of the motion to

compel as moot.

Thus, the sole unmet request in defendant's motion to compel is the responses

to request for production number 108 and interrogatories 16 and 17.  Request for

production 108 seeks "copies of all shares of stock or equity issued by OnActuate

Consulting, Inc. to any persons or entity."  Dkt. No. 78 at 16.  Interrogatory 16 seeks the

identity of "all the shareholders of OnActuate Consulting, Inc., and the percentage of

---

[10]   This deadline will be imposed unless the parties seek, and obtain, an extension from the Court.
Parties are advised that they should not seek extensions absent the ability to demonstrate good cause.
[11]   Pursuant to the Local Rules for the Northern District of New York, as a motion to compel is a
nondispositive motion, parties would need to obtain permission of the Court to file a reply.  <u>See</u> N.D.N.Y.
L.R. 7.1(a)(2).

equity that each shareholder owns in the company." Id.  Interrogatory 17 seeks the identity of "all owners of OnActuate Consulting India Pvt. Ltd. and each owner's percentage of ownership [sic] the company." Id.  Defendant seeks to obtain this information is in the event it needs to "subpoena documents from OnActuate India through its parent company OnActuate before trial."  Dkt. No. 75-25 at 28.

Plaintiff points out, beyond the time records – which it has since provided – defendant does not indicate what documents it would seek to subpoena from OnActuate about OnActuate India.  Plaintiff argues that the requests in question are irrelevant because defendant has asserted no claims against OnActuate's shareholders or nonparty subsidiaries and has not raised "any veil piercing theory of liability."  Dkt. No. 78 at 15.  However, defendant does not suggest that it seeks this information based on such claims.  Rather, it makes clear that it wishes to know how interconnected the two companies because, if it is demonstrated that the companies are essentially one in the same, it can obtain needed documents from OnActuate India.  See Dkt. No. 75-25 at 28.

Plaintiff has obfuscated OnActuate's connectedness with OnActuate Consulting India Pvt. Ltd. by failing to inform defendant, for two years, that certain witnesses were not OnActuate employees, but consultants.  Further, defendant sought request for production 108 and interrogatories 16 and 17 in a timely manner, but plaintiff objected to the request and interrogatories.  At Mr. Shafti's deposition, he gave no clear responses regarding the degree of control that OnActuate has over OnActuate Consulting India Pvt. Ltd.  See Dkt. No. 75-25 at 23.  At Mr. Goel's deposition, he provided testimony suggesting that OnActuate and OnActuate India were "basically one company."  Id. at

24.  The Court does not believe that there is evidence that defendant is seeking to harass plaintiff through this request or that this request has no relevance.  Rather, plaintiff has produced conflicting information regarding the degree of control, if any, OnActuate has over OnActuate India.  Defendant's only other option in obtaining documents relating to OnActuate India is through the Hague Convention, which, as defendant points out, can be an extremely lengthy – and often unsuccessful – endeavor.  See Dkt. No. 76-1 at 13 n.3.  Although plaintiff argues that it has not denied defendant any documents related to OnActuate India, rendering these requests "hypothetical," it did refuse to provide the requested timesheets until defendant filed the instant motion to compel.  Dkt. No. 78 at 16.  This has not instilled confidence in the Court that defendant would be able to obtain relevant information regarding OnAcutate, that may be in the possession of OnActuate India, absent further motion practice.

Accordingly, defendant's motion to compel is granted insofar as plaintiff is to provide defendant with responses to request for production 108 and interrogatories 16 and 17 that provide the requested information.  In so granting, the Court makes no determination at this time whether this information can or will demonstrate that OnActuate has sufficient ownership or control over OnActuate India such that defendant can successfully subpoena OnActuate for documents relevant to OnActuate India.

## V. **Conclusion**

Wherefore, for the reasons set forth herein, it is hereby

**ORDERED**, that defendant's motion, insofar as it seeks to file a late expert disclosure, dkt. no. 75, is **GRANTED**; and it is further

**ORDERED**, that defendant will be **SANCTIONED** as follows: defendant is to pay (1) plaintiff's reasonable costs and attorney's fees in opposing defendant's motion to compel/serve late expert disclosure, (2) the costs of any stenography and transcription fees associated with the deposition of defendant's expert witness and the stenography and transcription fees associated with the deposition of plaintiff's rebuttal expert witness, if one is proffered; and it is further

**ORDERED**, that to the extent plaintiff has provided timesheets, a document index, and supplemental response, the motion to compel, dkt. no. 75, is **DENIED as moot** with respect to those claims;

**ORDERED**, that to the extent defendant seeks to compel plaintiff to provide answers to request for production 108 and interrogatories 16 and 17, Dkt. No. 75, that request is **GRANTED**, and plaintiff is to serve its responses within **TEN (10)** days from the filing date of this Memorandum-Decision & Order; and it is further

**ORDERED**, that plaintiff's motion to strike late expert disclosure, dkt. no. 76, including its demand for attorney's fees and costs in connection with that motion, is **DENIED**; and it is further

**ORDERED**, that the dispositive motion deadline will be reset by the Court by separate order; and it is further

**ORDERED**, that the Clerk of the Court serve this Memorandum-Decision & Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Dated: September 8, 2023
    Albany, New York

Christian F. Hummel
U.S. Magistrate Judge